**NEWELL ENTERPRISES, INC.;
and Joe Newell, Individually,
Appellants,**

v.

**Hon. James BOWLING, Jr., Judge,
Bell Circuit Court, Appellee,**

and

**Concrete Products, Inc., Real
Party in Interest.**

No. 2004–SC–0263–MR.

Supreme Court of Kentucky.

Jan. 20, 2005.

Rehearing Denied April 21, 2005.

Kenneth A. Smith, Jr., London, Counsel for Appellants.

James Bowling, Jr., Judge, Bell Circuit Court, Pineville, for Appellee.

William A. Watson, Middlesboro, Counsel for Real Party in Interest.

Opinion of the Court by Justice KELLER.

## I. INTRODUCTION

In an original action in the Court of Appeals, Appellants petitioned for a writ (1) to set aside the finding by the Bell Circuit Court that an injunction existed against Appellants and (2) to bar pending contempt proceedings against Appellants. The Court of Appeals denied the petition, finding that Appellants had failed to show that they had no adequate remedy by appeal and that they would suffer great and irreparable harm. Appellants now appeal, claiming that because contempt proceedings are different from other proceedings and because the nature of the harm from a contempt order is so great, a writ is necessary. We disagree and affirm the judgment of the Court of Appeals.

## II. BACKGROUND

In 1996, Concrete Products, Inc., Real Party in Interest (hereinafter "Concrete Products"), filed a lawsuit in Bell Circuit Court against Newell Enterprises, Inc., Appellant (hereinafter, with Joe Newell, "Appellants"). The parties settled the lawsuit by entering into a non-compete agreement on September 7, 2001. The non-compete agreement set forth geographical limits on Appellants' business of the production and sale of ready-mix concrete in Bell County and was to be in effect for five years.

On August 8, 2003, Concrete Products filed a second lawsuit against Appellants in Bell Circuit Court, Civil Action No. 03–CI–00364. In this second lawsuit, Concrete Products claimed that Appellants had breached the non-compete agreement by engaging in the business of production and sale of ready-mix concrete within the proscribed geographic area. Apparently, Appellants admitted to breaching the agreement, albeit mistakenly, and on September 3, 2003, settled the case by tendering a document signed by both parties and entitled "Judgment Pro Confesso." Although this document is more appropriately termed an "agreed judgment" given that the parties tendered it to the court and

agreed to its terms and that it was apparently not the result of a failure to answer the complaint,[1] for the sake of clarity, we will retain the parties' nomenclature.

According to the "Judgment Pro Confesso," Appellants affirmed the non-compete agreement and agreed to observe its terms. The "Judgment Pro Confesso" also dismissed the second lawsuit *with prejudice.*

On October 30, 2003, Concrete Products filed a motion for an order of contempt and for sanctions against Appellants for alleged further violations of the non-compete agreement. In its motion, Concrete Products claimed that Appellants had done concrete work within the proscribed geographic area during September and October of 2003. Curiously, the motion was filed under the docket number (03–CI–00364) of the lawsuit that had been filed in August 2003 and then was voluntarily dismissed by the parties' agreement with prejudice in September 2003. On December 8, 2003, the Bell Circuit Court entered an order stating that although the "Judgment Pro Confesso" did not meet the technical requirements of CR 65.02, which lists

the requirements of a restraining order or an injunction, the court had "determined that [Appellants were] permanently enjoined by the entry of the Judgment Pro Confesso" and scheduled Concrete Products's contempt motion for a hearing on December 22, 2003.

Rather than face a contempt finding and possible sanctions, Appellants filed an original action in the Court of Appeals seeking a writ directing the Bell Circuit Court to "set aside the … finding of the existence of an injunction and desist from further judicial actions flowing therefrom." Appellants argued that the "Judgment Pro Confesso" was not an injunction because it failed to meet the requirements of CR 65.02, and thus the circuit court was acting improperly. Appellants then argued that they would be irreparably injured and had no adequate remedy by appeal because the trial court had summarily determined that a breach of contract had occurred and had created an ex post facto injunction, and, as a result, Appellants "face[d] impositions of sanctions, all without the benefits and safeguards of due process of law and compli-

---

**1.** *See* 27A AM. JUR. 2D *Equity* § 249 (1996) ("A decree pro confesso in equity is similar to a default judgment in an action at law. If a defendant in an equity suit fails to answer the plaintiff's petition within the prescribed time period, the bill will be taken pro confesso, and a decree entered in favor of the plaintiff accordingly."). *Compare* BLACK'S LAW DICTIONARY 1243 (8th ed.2004)(defining *"pro confesso"* as follows: "As having confessed or admitted liability, as by failing to appear when required. A defendant who failed to answer a bill in equity was often treated *pro confesso*."), *and id.* at 178 (defining "bill taken *pro confesso*" as follows: "An order issued by a court of equity when a defendant fails to file an answer."), *and* id. at 441 (defining "decree pro confesso" as follows: "A decree entered in favor of the plaintiff as a result of the defendant's failure to timely respond to the allegations in the plaintiff's bill; esp., a decree entered when the

defendant has defaulted by not appearing in court at the prescribed time.—Also termed *decree taken pro confesso.*"), *with id.* at 858–59 (defining "agreed judgment" as follows: "A settlement that becomes a court judgment when the judge sanctions it. In effect, an agreed judgment is merely a contract acknowledged in open court and ordered to be recorded, but it binds the parties as fully as other judgments."). It is even possible that the document is a "confession of judgment," *see id.* at 317 (defining "confession of judgment" as follows: "1. A person's agreeing to the entry of judgment upon the occurrence or nonoccurrence of an event, such as making a payment. 2. A judgment taken against a debtor by the creditor, based on the debtor's written consent. 3. The paper on which the person so agrees, before it is entered." (citations omitted)), but it is definitely not a "judgment *pro confesso.*"

ance with procedural steps required by CR 65.02."

The Court of Appeals considered Appellants' original action and found it to be without merit. Specifically, the Court of Appeals held that Appellants "failed to show that they would suffer irreparable harm without the issuance of the writ and ... failed to show that they have no adequate remedy by appeal." Appellants now appeal to this Court as a matter of right.[2]

## III. ANALYSIS

■ The writ of prohibition is such an "extraordinary remedy" that Kentucky courts "have always been cautious and conservative both in entertaining petitions for and in granting such relief."[3] We have divided writ cases into "two classes," which are distinguished by "whether the inferior court allegedly is (1) acting without jurisdiction (which includes 'beyond its jurisdiction'), or (2) acting erroneously within its jurisdiction."[4] Under the first class of cases, if the lower court lacks jurisdiction and relief from an intermediate court is not available, then a writ is appropriate

and the higher court may, in its discretion, issue the writ.[5]

■ Under the second class of cases, a writ "*may* be granted upon a showing ... that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted."[6] "No adequate remedy by appeal" means that any injury to Appellants "could not thereafter be rectified in subsequent proceedings in the case."[7] Lack of an adequate remedy by appeal is an absolute prerequisite to the issuance of this second class of writ.[8] "Great and irreparable injury" means "something of a ruinous nature."[9] "Ordinarily if this cannot be shown, the petition will be dismissed."[10]

■ The basic standard of review of the grant or denial of a writ is abuse of discretion.[11] But where the issue presented involves a question of law, we review the question of law de novo.[12] And if the

---

**2.** CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); *see also* KY. CONST. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court.").

**3.** *Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky. 1961).

**4.** *Id.*

**5.** *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004); *Chamblee v. Rose,* 249 S.W.2d 775, 777 (Ky.1952).

**6.** *Hoskins,* 150 S.W.3d at 10 (Ky.2004); *see also Bender,* 343 S.W.2d at 801 (holding that writs "ordinarily ha[ve] not been granted unless the petitioner established, as conditions precedent, that he (a) had no adequate remedy by appeal or otherwise, *and* (b) would

suffer great and irreparable injury (if error has been committed and relief denied." (emphasis in original))).

**7.** *Bender,* 343 S.W.2d at 802.

**8.** *Id.* at 801.

**9.** *Id.*

**10.** *Id.*

**11.** *Haight v. Williamson,* 833 S.W.2d 821, 823 (Ky.1992) ("Issuance of, or a refusal to issue a writ of prohibition is in the sound discretion of the court.").

**12.** *Rehm v. Clayton,* 132 S.W.3d 864, 866 (Ky.2004)("[A]ppellate review of that decision is limited to an abuse-of-discretion inquiry, except for issues of law which are reviewed de novo."); *see also Ky. Labor Cabinet v. Graham,* 43 S.W.3d 247, 250 (Ky.2001) ("As

alleged error lies in findings of fact of the Court of Appeals, e.g., the finding regarding irreparable harm,[13] then we would review for clear error under CR 52.01.

 On appeal, Appellants have made two claims: (1) that the Court of Appeals erred in not granting the writ under the usual standard because this case involves a contempt proceeding, thus it is "in a class by itself"; and (2) the adverse effect of a contempt citation on Appellants' reputation in the business community is a special circumstance that requires the extraordinary remedy of a writ. The first of these issues was not raised at the Court of Appeals. Instead, Appellants only argued to the Court of Appeals that the sanctions that could result from the contempt hearing at the circuit court constituted a great and irreparable harm with no adequate remedy on appeal. "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court."[14] As such, we cannot properly address Appellants' current claim regarding the "specialness" of contempt proceedings because that matter was not argued to the Court of Appeals, though we must admit that Appellants' implied claim that contempt proceedings require a different writ standard seems without merit.

Appellants' second claim, regarding the negative effect on reputation of a contempt order, could be read as a claim of great and irreparable injury. Though the claim was not presented in exactly this form to the Court of Appeals, where Appellants merely made the blanket assertion that the possible sanctions stemming from a finding of contempt would be great and irreparable injury, it is close enough that we will address it.

 First, we would note that Appellants do not appear to claim that a contempt proceeding could not be adequately remedied by appeal. This, in and of itself, is fatal to their appeal because we "have consistently (apparently without exception) required the petitioner to pass the first test; i.e., he must show he has no adequate remedy by appeal or otherwise" before proceeding to the determination of whether great and irreparable harm exists.[15] But because the Court of Appeals addressed the issue, albeit briefly, and because it is arguable that Appellant has, somewhere "between the lines," implied that it has no adequate remedy by appeal, and because the existence of a remedy by appeal, adequate or not, is a question of law, which we review de novo, we will address the issue.

 At one time, no appeal was allowed from a judgment of contempt[16]

---

the issues on this appeal are to be decided as a matter of law, our review of the Court of Appeals decision is not confined to an abuse of discretion inquiry.").

13. Normally it would be inappropriate for the Court of Appeals to find facts, but because it acts as the trial court in original actions, such findings are necessary.

14. *Skaggs v. Assad,* 712 S.W.2d 947, 950 (Ky. 1986); *see also Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky.1976). ("[A]ppellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court.").

15. *Bender,* 343 S.W.2d at 801.

16. 1898 Ky. Acts ch. 19, § 1 ("No appeal shall be taken to the Court of Appeals ... to reverse a judgment ... punishing contempt[.]" (codified as KS 950)); 1914 Ky. Acts ch. 23, § 1 ("[N]o appeal shall be taken to the Court of Appeals as a matter of right ... to reverse a judgment ... punishing contempt[.]" (codified as KS 950–1)); 1942 Ky. Acts ch. 208, § 1 (re-enacting KS 950–1 as KRS 21.060); 1952 Ky. Acts ch. 24, § 1 ("Appeals may be taken to the Court of Appeals as a matter of right from all final orders and judgments of circuit courts in civil cases ex-

except "to determine whether the punishment declared by the judgment complained of was illegally imposed, and whether such punishment [was] excessive." [17] And for that reason, as a matter of law, no adequate remedy by appeal existed from a contempt judgment and issuance of a writ was the appropriate remedy.[18] But since the adoption of the Judicial Amendment and the enactment of enabling legislation, there has existed a right of appeal from a contempt judgment.[19] Thus, today, possible sanctions for contempt, standing alone, may not mean irreparable harm for which no adequate remedy by appeal exists. A petition to

cept: ... Judgments punishing contempts[.]" (codified as KRS 21.060(1)(c))); 1976 Ky. Acts ch. 67, § 14 (repealing KRS 21.060 after passage of Kentucky's Judicial Amendment).

**17.** *French v. Commonwealth*, 97 S.W. 427, 430 (Ky.1906); *accord Levisa Stone Corp. v. Hays*, 429 S.W.2d 413 (Ky.1968) ("Some confusion has been created by opinions of this court which recognize a limited right of appeal from judgments punishing for criminal contempt on the ground the punishment was either 'illegally imposed' or was 'excessive'.").

**18.** *E.g., Miller v. Stephenson*, 474 S.W.2d 372, 375–376 (Ky.1971) ("KRS 21.060(1)(c) forbids an appeal from judgments punishing contempts.... The impact upon the professional standing of a lawyer created by a citation for contempt of court is not limited by the monetary amount of the fine imposed. The court is of the view that the petition states facts and circumstances entitling the petitioner to the extraordinary remedy sought."); *Herr v. Humphrey*, 277 Ky. 421, ——, 126 S.W.2d 809, 810 (1939) ("The first question presenting itself is as to the power of this court to issue a writ of prohibition restraining a circuit judge from punishing for contempt where he is proceeding outside of his jurisdiction or is proceeding erroneously within his jurisdiction. This is no longer an open question, as it was determined in the affirmative in the case of *Williams v. Howard*, 270 Ky. 728, 110 S.W.2d 661, the basis of the opinion being that where the lower court was about to impose a fine for criminal contempt without jurisdiction, or erroneously within his jurisdiction, the petitioner was without adequate remedy by appeal and would suffer great and irreparable injury."); *Lisanby v. Wilson*, 280 Ky. 768, ——, 134 S.W.2d 651, 653 (1939) ("Although a judgment punishing one for contempt of court may not be superseded, and this Court on appeal is limited to a determination of whether the penalty was legally imposed or was excessive as distinguished from the question of the appellants' guilt or innocence, this court is authorized by the Constitution, § 110, to issue writs of prohibition, not only where the lower court is proceeding outside of its jurisdiction, but where it is acting within its jurisdiction, though erroneously, and great and irreparable injury will result to the applicant and there exists no adequate remedy by appeal or otherwise. Because of the inadequacy of the remedy by appeal in contempt proceedings, we have not hesitated to issue a writ to prohibit punishment for contempt whenever a proper case for the exercise of this power has been presented to us." (citation omitted)); *Williams v. Howard*, 270 Ky. 728, ——, 110 S.W.2d 661, 663 (1937) ("An appeal will not lie from a judgment punishing one for criminal contempt except for the purpose of determining whether the punishment imposed is illegal, or excessive, and not for the purpose of retrying the question of contempt. It is clear, therefore, that if the respondent should hold the petitioner guilty of contempt, and fine him $30 or imprison him for not exceeding 30 hours, as he is authorized to do without the intervention of a jury, section 1291, Kentucky Statutes, the petitioner would suffer great and irreparable injury without adequate remedy by appeal.").

**19.** Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court."); 1976 Ky. Acts ch. 70, § 3("(1) Except as provided in Section 110 of the Constitution, an appeal may be taken as a matter of right to the Court of Appeals from any conviction, final judgment, order, or decree in any case in Circuit Court, including a family court division of Circuit Court, unless such conviction, final judgment, order, or decree was rendered on an appeal from a court inferior to Circuit Court.") (codified as KRS 22A.020(1)); 1976 Ky. Acts ch. 67, § 14 (repealing KRS 21.060, which, at the time, prohibited appeals of contempt findings).

prohibit possible sanctions for contempt stands on its own merits, and a writ will not issue unless it is shown that the standard for the issuance of a writ has been met. On this point, we simply note that because almost any contempt finding by the circuit court would be appealable, the remedy of a writ is inappropriate.[20]

■ Although it is unnecessary, for the sake of completeness, we will address the great and irreparable harm aspect of Appellants' second claim. While it is possible, though unlikely, that a finding of contempt could injure a business reputation to such a degree as to cause great and irreparable harm, we note that the Court of Appeals was not convinced that was the case here; thus it ruled that Appellants failed to show such great and irreparable harm. This is a finding of fact to which we defer under the clearly erroneous standard.

Citing *Miller v. Stephenson*,[21] Appellants argue that the impact of a contempt finding on the reputation of an attorney goes beyond the pecuniary loss caused by the fine itself. But nowhere in the record is there an assertion that an attorney will be negatively impacted by a possible contempt finding in this case. It is possible that one of the Appellants, Joe Newell, is an attorney, but that fact has not been asserted anywhere in the record. Appellants also claim that their business competitors could use a contempt citation "to paint [them] as unscrupulous and a scofflaw." While this may be the case, Appellants have failed to produce sufficient evidence in the record to show that the Court of Appeals clearly erred in failing to find either that Appellants might gain reputations as being unscrupulous or as scofflaws or that such an effect on reputation would rise to the level of great and irreparable injury. Upon reviewing the record, scant as it is, we are not convinced—at all—that the finding of the Court of Appeals was clearly erroneous.

■ Though the Court of Appeals did not address this issue, we also note that Appellants have not been held in contempt. They petitioned the Court of Appeals before the circuit court held the scheduled contempt hearing. Any harm they faced, in addition to not being great and irreparable, is at most only a *potential* harm, and, as such, Appellant's writ claim is not ripe.

■ Finally, we note that Appellants would have been better served by proceeding under the first class of writ cases, i.e., where the lower court is proceeding outside its jurisdiction, because it appears that the circuit court in this case has done exactly that with the order it entered on December 8, 2003. "In simple terms, jurisdiction is '[a] court's power to decide a case or issue a decree."'[22] Jurisdiction, however, consists of three separate elements: "(1) jurisdiction over the person, (2) jurisdiction over the subject matter, and (3) jurisdiction to render the particular judgment sought, or as is sometimes said, jurisdiction of the particular case."[23] This case appears to fail this third prong because the civil case in which the order and Concrete Products's motion for contempt were filed had already been dismissed *with*

---

20. *See Commonwealth ex rel. Dept. for Natural Res. and Envtl. Prot. v. Williams,* 536 S.W.2d 474 (Ky.1976) (holding that original action for a writ against enforcement of a contempt order was not proper because the contempt order was appealable).

21. 474 S.W.2d 372 (Ky.1971).

22. *Clements v. Harris,* 89 S.W.3d 403, 406 (Ky.2002) (Keller, J. dissenting) (quoting BLACK'S LAW DICTIONARY 857 (7th ed.1999)).

23. 20 AM. JUR. 2D *Courts* § 54 (1995).

*prejudice* by the entry of the "Judgment Pro Confesso" in August 2003 and Concrete Products had not filed a separate civil suit over the alleged new breach of the non-compete agreement. Because the civil action was no longer pending before the circuit court, the circuit court had no jurisdiction to take any action in the case.

Appellants, however, have not raised this issue. And though in the context of a writ case where the lower court was acting outside its jurisdiction our predecessor court noted that "it would be a most inept ruling to deny the writ, require a trial on the merits, and then on an appeal be forced to reverse the case," [24] it also noted that "question [of jurisdiction] is squarely presented" [25] and that jurisdiction was "the very question ... before [the Court]." [26] Thus, because the issue is not before us and was never even presented to the Court of Appeals, we cannot reverse the denial of the writ on this ground.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

LAMBERT, C. J.; COOPER, GRAVES, JOHNSTONE, SCOTT and WINTERSHEIMER, JJ., concur.

---

**24.** *Chamblee,* 249 S.W.2d at 777.

