INTERACTIVE MEDIA ENTERTAIN-
MENT AND GAMING ASSOCIA-
TION, INC., Petitioner,

v.

Hon. Thomas D. WINGATE, Judge,
Franklin Circuit Court; Jack Conway,
Attorney General, Commonwealth of
Kentucky, Respondents.

and

Commonwealth of Kentucky, ex rel. J.
Michael Brown, Secretary, Justice and
Public Safety Cabinet, Real Party In
Interest,

and

Interactive Gaming Council, a Non-
Profit Trade Association,
Petitioner,

v.

Hon. Thomas D. Wingate, Judge,
Franklin Circuit Court,
Respondent.

and

Commonwealth of Kentucky, ex rel. J.
Michael Brown, Secretary, Justice and
Public Safety Cabinet, Real Party In
Interest.

Nos. 2010–SC–000212–TG,
2010–SC–000266–TG.

Supreme Court of Kentucky.

Sept. 23, 2010.

## OPINION AND ORDER GRANTING TRANSFER AND DENYING PETITION

The Petitioners, Interactive Media Entertainment and Gaming Association (IMEGA) and Interactive Gaming Council (IGC), both seek to have their writ actions in the Court of Appeals transferred to this Court. The Court of Appeals recommended transfer of both actions. Since writ actions are original filings before the Court of Appeals, an appeal of its decision regarding the writ is the proper procedural mechanism to reach this Court, not a motion for transfer. However, given that this Court views this writ action as an attempt to bypass the procedural and substantive jurisdiction of the trial court, and since we and the Court of Appeals have already reviewed the record in this case on a previous writ action, we grant transfer. However, we deny the writ.

## I. Background

This matter originated with an action by the Commonwealth in Franklin Circuit Court to seize 141 domain names, which the Commonwealth alleged to be hosting illegal internet gambling. The action was styled and conducted as an in rem proceeding because the Commonwealth was not suing anyone, but was instead trying to seize property—the intangible domain names. The trial court found that there was probable cause to believe that the websites were violating Kentucky gambling laws, and ordered seizure of the domain names. After learning of the seizure, several parties claiming an interest in the domain names came forward, through counsel. They sought to intervene in the action and to contest the seizure. Several of these parties purported to be the gambling domain names themselves, while others were gambling associations claiming an associational interest in contesting the seizure. The trial court denied standing to any of these parties to contest the seizure because they were not owners or registrants of the domain names, and therefore, did not have a legal interest in the matter. Without any adverse claimants, the trial court then set a forfeiture hearing to allow the actual registrants and owners of the domain names to come forward and contest the forfeiture. Denied at the trial court, the same parties seeking to intervene filed an original action at the Kentucky Court of Appeals, seeking a writ of prohibition. They claimed the trial court, by ordering seizure of the domain names, was acting outside its jurisdiction, which is one of the grounds for granting a writ. The Court of Appeals granted the writ in a 2-to-1 decision on the merits that the trial court did not have jurisdiction to order the seizure of the gambling domain name because they were not gambling devices. The opinion, as well as the concurrence and dissent, failed to adequately address

that the parties' standing was also at issue in the writ action, as raised by the Commonwealth.

In March, 2010, this Court reversed the Court of Appeals. *See Commonwealth ex rel. Brown v. Interactive Media Entertainment and Gaming Ass'n, . Inc.*, 306 S.W.3d 32, 34 (Ky.2010). In so doing, this Court agreed with the trial court that neither the domain names themselves nor the gambling associations had established standing to contest the seizure. The domain names were the actual properties seized, so they could not contest their own seizure. Meanwhile, the gambling associations had not made any showing that they actually represented owners or registrants of the seized property, so they could not have associational standing. However, that opinion did not clearly delineate that by agreeing with the trial court's view of the standing of the Petitioners, this Court viewed standing to take a writ action as derivative of a party having a stake in the underlying action. That Opinion merely denied standing to proceed in that writ action.

Upon our reversal of the granting of the writ, the two gambling associations—IMEGA and IGC—filed subsequent writ petitions at the Court of Appeals. They claimed to have cured their standing defects by naming some of their members and including affidavits that these members are owners or registrants of some of the domain names. The Court of Appeals granted the associations' motions to recommend transfer of the case to this Court because the Court of Appeals had already ruled on the merits. We accept transfer and now deny the writ without further proceedings.

## II. Discussion

### A. Standing

 The controlling point that was perhaps not clear in *Commonwealth ex rel.* *Brown v. Interactive Media Entertainment and Gaming Ass'n, Inc.* is that a party without standing, or a stake, in the lower court proceeding for which a writ is sought simply does not have standing to seek a writ against the lower court. Writ actions are not available to any party that might claim to have an interest in underlying litigation: such a party must have demonstrated a real and justiciable stake in the lower court proceeding, which in turn gives rise to a stake in the concomitant writ action.

At the point when the first writ action was filed in the Court of Appeals, the trial court had determined that the Petitioners were not the actual owners or registrants of the domain names, and therefore had no standing to intervene. Having been denied intervention, the Petitioners were not proper parties in the underlying action, and obviously had no standing to challenge, by writ action or otherwise, anything other than the lower court's standing determination. In the first writ action, instead of addressing the jurisdictional issues that had been raised at and addressed by the Court of Appeals, this Court reviewed the trial court's decision that the Petitioners had no standing. We agreed with the trial court's findings in this regard and overruled the Court of Appeals, which had prematurely addressed the merits of the trial court's jurisdiction to seize the domain names. Since Petitioners had no standing to challenge that jurisdiction, and instead could only challenge whether the trial court was correct in its determination as to their standing in the lower court, this Court denied the writ both substantively on the standing issue and procedurally on the jurisdiction issue.

However, in conclusory dicta, this Court created some confusion when it stated,

If a party that can properly establish standing comes forward, the writ petition giving rise to these proceedings could be re-filed with the Court of Appeals. The Court of Appeals could then properly proceed to the merits of the issues raised, or upon a proper motion, this Court could accept transfer of the case, as the merits of the argument have already been briefed and argued before this Court.

*Interactive Media Entm't & Gaming Ass'n, Inc.*, 306 S.W.3d at 40.

While this Court believes it should have been apparent that it was referring to a potential writ action *after the question of standing was heard and decided by the trial court on a renewed motion to intervene*, the language can be subject to the interpretation implicit in the Petitioners' decision to proceed directly to the Court of Appeals after identifying an alleged domain name owner. No doubt, the Petitioners' interpretation was driven in part by this Court's statement that proof of standing "may be done by reference to the facts in the underlying litigation or a verified assertion, such as in an affidavit, attached to the petition." *Id.* However, as the record demonstrates, neither of these options is workable at this point.

The Petitioners have attempted to proceed under the second option, specifically by filing with their renewed writ petition several affidavits claiming to identify members who own domain names subject to the seizure order. For example, IMEGA has included affidavits that purport to show that Yatahay, Ltd.—the lone member that group has identified—actually owns a seized domain. Yet, the Commonwealth takes issue with IMEGA's assertion and questions the adequacy of the affidavits, pointing to an unconventional and arguably improper notarization. Moreover, the Commonwealth has presented contrary evidence of another entity's ownership of the domain name. Of course, whether Yatahay actually owns the domain name is critical to IMEGA's assertion of standing. While this preliminary factual dispute may be a relatively simple one, it involves a fact finding mission that an appellate court, even one facing a writ petition, is not well suited to undertake.

Though this Court has on occasion noted that fact-finding by an appellate court may be required in the course of resolving a writ petition, *see, e.g., Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 758 n. 13 (Ky.2005) (noting that "because [an appellate court] acts as the trial court in original actions, such findings are necessary"), such claims have been made in an attempt to delineate when the various standards of review are to be used in a writ action and are arguably dicta. It is difficult to imagine a scenario where it would actually be appropriate for an appellate court to decide questions of fact where the relevant facts are disputed, especially when the court is faced with the type of limited record found in a writ action. As this Court has more recently noted, writ decisions are inherently difficult in large part because they "necessitate[ ] an abbreviated record," which "magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants." *Cox v. Braden*, 266 S.W.3d 792, 795 (Ky.2008). "As such, the specter of injustice always hovers over writ proceedings, which explains why courts of this Commonwealth are—and should be—loath to grant the extraordinary writs unless absolutely necessary." *Id.* Thus, any claims about the appropriateness of fact-finding by an appellate court in writ actions in this Court's prior decisions were therefore at least slightly overstated.

The necessity for fact-finding in this case is underscored by the fact that this

case presents novel questions of law related to standing and jurisdiction that can only be addressed after the factual complexities of the case have been clarified, such as who is actually the owner of a given domain name and the applicability of associational representation in an in rem proceeding.

One method of showing standing recited in the previous writ action, "by reference to the facts in the underlying litigation," is inapplicable in this case. Though perhaps inartfully stated, this language was intended as a reference to factual findings that have been made by the trial court. But the Petitioners have not yet returned to the circuit court to even present the theories of standing discussed in our earlier decision denying the requested writ in this case, much less asked that court to resolve the apparent factual disputes upon which their standing claims depend.

Most telling about this case is the fact the Petitioners have developed their factual proof of standing further in this writ proceeding than at the underlying trial, where they have continued to conceal the identity of their members and the domain names that those members own. Rather than returning immediately to the appellate courts, the Petitioners could have more expediently reacted to the standing defect by returning to the Franklin Circuit Court and addressing the matter there.

Unfortunately, the Petitioners appear to want to skip several important procedural requirements to reach the substantive determination on the jurisdiction question, and perhaps this is understandable. Yet, if they were to demonstrate standing to the trial court, which in turn would allow that court to address their jurisdictional claims, the Petitioners might not even need to turn to the appellate courts, either for a writ or a direct appeal. There is certainly nothing so extraordinary about

this case that it requires ignoring the very real questions about Petitioners' standing to proceed any more so than all the other parties who have been required to show standing in every other court case.

At this point, this Court cannot justify granting a writ against the Franklin Circuit Court when that body has acted and ruled correctly thus far in this case regarding standing issues. The fundamental standing decision the court has made to this point is that neither the domain names themselves, nor the associations purporting to represent anonymous owners, had standing to contest the Commonwealth's seizure. This Court employed the same logic in initially denying the writ of prohibition for lack of standing. *Interactive Media Entm't & Gaming Ass'n*, 306 S.W.3d 32.

The circuit court has not yet had the opportunity to rule on the merits of the seizure (or the question of jurisdiction related to the seizure) because it has not heard from a party that could properly contest it. Nor has that court had a chance to address the question of standing in light of this Court's prior decision addressing the possibility of showing associational standing and the associations' most recent disclosures regarding their members' ownership of some of the domain names. Allowing the trial court to fully develop the facts and applicable law is the best way to develop an adequate record for review by a higher court.

## B. Transfer of the Writ Action

■ Though this Court has decided to grant the motion to transfer, it is necessary to note that the decision to do so is limited to the unique circumstances presented by this case (including the fact that this Court previously implied that such transfer "could" be granted, and that both the Court of Appeals and this Court have

previously reviewed the record in this case). Transfer is appropriate to correct any imprecise language from our prior decision and to set this case on the correct path as soon as possible. Any further time spent litigating about standing and jurisdiction in the appellate courts at this point will be wasted, since the indisputable prerequisite that a writ action can only be taken by a party that has a stake in the underlying action remains a hurdle for the Petitioners. Until the *circuit court* determines that the domain owners or registrants are properly before the court, no one has established standing to proceed on a writ action.

### C. This Court's Discretion

■ Finally, it is worth noting that even if this Court believed that Petitioners had made a good showing in support of a finding of standing and had demonstrated a lack of jurisdiction at the circuit court, "the decision whether to grant a writ of prohibition lies in the sound discretion of the reviewing court." *Edwards v. Hickman*, 237 S.W.3d 183, 189 (Ky.2007). Though this Court (and its predecessor) has been loath to deny a jurisdictional writ based solely on its discretionary power where a failure of subject matter jurisdiction has been established, *see, e.g., Hoskins v. Maricle*, 150 S.W.3d 1, 11 (Ky.2004); *Chamblee v. Rose*, 249 S.W.2d 775, 777 (Ky.1952), it has continually asserted that whether to grant the writ is still discretionary. Even if the prerequisites for either class of writ are met, the reviewing court has the discretion to deny the writ, where prudence dictates doing so. *Edwards*, 237 S.W.3d at 189.

Even if the concerns outlined above did not require that this Court deny the requested writ, they would still persuade this Court to exercise its discretion to deny this writ. These considerations illuminate how this case is not ripe for resolution by this Court, especially not via the "extraordinary remedy" of a writ of prohibition. *See Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky.2005) ("The writ of prohibition is such an 'extraordinary remedy' that Kentucky courts 'have always been cautious and conservative both in entertaining petitions for and in granting such relief.' ").

### III. Conclusion

Given the factual issues needing resolution, this Court cannot at this time determine IMEGA's and IGC's standing to pursue this writ action. The circuit court is best equipped to resolve those factual issues. The writ actions have been premature, since the standing questions are a hurdle to addressing the jurisdictional claims that the associations have raised. And, in turn, the standing questions raised at the trial court are a hurdle to addressing standing in the writ action. Having standing in the underlying action is a prerequisite to having standing in any original actions related to the underlying action.

Because the trial court has not had the opportunity to address Petitioners' claims, both as to standing and jurisdiction, they cannot establish standing to pursue the writ they seek. For this reason, this Court grants transfer of the petition for a writ but denies the writ.

All sitting. All concur. MINTON, C.J., also concurs by separate opinion in which CUNNINGHAM, J., joins.

MINTON, C.J., concurring:

This is not an ordinary case for many reasons. First, the Court of Appeals has recommended transfer. Second, the Petitioners have requested transfer. Third, though the Commonwealth asks us to "summarily deny" the petition, our resolution today does not appear to harm any

vital interest it may have in this matter. Fourth, and most importantly, I feel compelled to grant transfer because we, unfortunately, invited this motion to transfer in our earlier opinion in this matter. I agree with the majority's characterization of our previous invitation as "conclusory dicta. . . ." And I cannot fault the Petitioners for responding to our invitation by filing the motion before us today.

In short, I believe that the truly extraordinary and unique facts and procedural history of this case do not preclude us from granting transfer of this writ petition. So I respectfully concur with the majority's decision today.

CUNNINGHAM, J., joins this concurring opinion.

ENTERED: September 23, 2010.

/s/ <u>John D. Minton, Jr.</u>
 Chief Justice