# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 18, 2014
NOT TO BE PUBLISHED

𝕾upreme 𝕮ourt of 𝕶entucky

2013-SC-000815-MR

MELVIN K. DRURY, INDIVIDUALLY, ET AL                     APPELLANTS

ON APPEAL FROM COURT OF APPEALS
V.                     CASE NO. 2013-CA-001184
WOODFORD CIRCUIT COURT NO. 11-CI-00498

HON. PAUL ISAACS                                    APPELLEE
JUDGE, WOODFORD CIRCUIT COURT

AND

GARY FLORA, INDIVIDUALLY, ETC., ET AL        REAL PARTIES IN INTEREST

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

This case involves an incredibly complicated factual pattern. The following is an attempt to simplify the facts and bring into focus the legal issues before us.

Melvin O. Flora ("Melvin Sr.") and his wife, Florence Flora, were the parents of three children—sons, Gary and Bobby, and daughter, Barbara Drury. Each executed separate Wills, with Melvin Sr. leaving all his property to his wife Florence. He died in July 2009. Florence had a Will and two subsequent Codicils. Her Will divided her estate evenly among her three children. In addition, Florence's Codicils provided for the division of the family farms with each of her three children receiving certain identified tracts.

However, before her death and about a year after her husband died, Florence suffered a debilitating stroke. Not long after her stroke, on November 16, 2010, Florence executed several documents conveying all of her property to her daughter Barbara. One of the documents Florence executed was a Trust which revoked her Last Will and Codicils. Florence also signed several deeds of conveyance transferring all of the family farms to Barbara. Leslie Dean, the wife of Florence's grandson, Melvin, who is also the daughter-in-law of Barbara, is a Kentucky lawyer. She was the individual who prepared these documents and counseled Florence to sign. As a result, Melvin and Leslie stood to eventually inherit all of Florence's estate, thereby excluding Florence's sons, Gary and Bobby, Barbara's brothers. Needless to say, this did not bode well for family harmony and good will.

### Guardianship Action

The first volley was fired even before Florence, the matriarch of the family, died. On January 24, 2011, her son Gary filed a Disability Petition in the Woodford District Court. *Commonwealth of Kentucky, et al. v. Flora,* Woodford District Court, No. 11-H-00002-001. Gary petitioned the trial court to rule that his mother was disabled and that he be appointed her guardian. Gary felt this was necessary to protect Florence from further exploitation at the hands of his sister Barbara, nephew Melvin, and Melvin's wife Leslie. A hearing was held in June of 2011, during which Florence testified. Florence was not capable of identifying members of her family, their spouses and children, nor was she able to describe her properties or assets. As such, the

2

trial court determined that Florence was unable to manage her own financial affairs and could not make decisions concerning the disposition of her property. Gary was appointed as Florence's guardian.

### *Barbara and Melvin Drury's Estates*

Tragically, things quickly got more complicated. Barbara and her husband, William Drury, were involved in a fatal car accident on May 24, 2011. Barbara died instantly, with her entire estate being passed to her husband. However, William passed away several weeks later. Their son Melvin was appointed as personal representative and administrator for his mother and father's estates. With the death of both parents, Melvin and his siblings Byron and Regina stood as heirs to inherit what Florence conveyed to Barbara via the November 16, 2010, documents. In an attempt to invalidate this potential loss of their inheritance, Gary and Bobby filed the underlying suit in the Woodford Circuit Court against Leslie, Melvin, and as will be explained, their Limited Liability Company, Rasa Properties, LLC (collectively referred to as "Petitioners"). *Flora, et al. v. Dean, et al.,* 11-CI-00498, Woodford Circuit Court. Byron subsequently joined Gary and Bobby as a party plaintiff in the action (collectively referred to as "Respondents").

The legal maneuvering became even more complicated when Florence died on January 28, 2012, during the pendency of the underlying action. On February 2, 2012, mere days after Florence's death, Melvin and Leslie contacted Nevada asset protection expert Derrick Rowley. Melvin and Leslie were facing a substantial amount of debt and were attempting to protect their

3

new found inheritance. Rowley instructed the couple to create a Nevada Corporation in order to avoid judgment creditors. Accordingly, Leslie and Melvin created Rasa. Leslie then drafted numerous quitclaim deeds, dated February 13, 2012. These deeds transferred the family farms to Rasa at the exclusion of Gary and Bobby. Subsequently, a *lis pendens* was filed with the Woodford County Clerk on the subject properties. On February 15, 2012, the Fayette Circuit Court issued a two million dollar Judgment and Order of Sale against Leslie and Melvin as owners of a limited liability company. *Forcht Bank, NA v. Eagle View One, LLC, et al.,* 11-CI-3482, Fayette Circuit Court.

### Florence Flora's Probate Proceedings

Meanwhile, the estate of the parent benefactor, Florence, had to be settled. Gary and Bobby filed competing petitions against Melvin and Leslie in Florence's probate proceeding in the Woodford District Court. *See In re: Estate of Florence Flora,* Woodford District Court, No. 12-P-00022. Gary and Bobby petitioned the trial court to admit to probate Florence's Will and Codicils. Gary also petitioned the trial court to name him administrator of Florence's estate, as provided for in her Will. On the other hand, Melvin and Leslie filed a petition requesting to register Florence's Trust signed on November 16, 2010. As mentioned, the Trust supposedly revoked Florence's previous Will and Codicils and named Melvin as the administrator of her estate. Essentially, the trial court was tasked with determining whether Florence had the mental capacity to execute the Trust on November 16, 2010. If so, Florence's Trust would govern, thereby rendering her passing intestate. Moreover, such a ruling

4

would provide validity to the other November 16, 2010, instruments conveying all of Florence's property, including the family farms to Barbara, and thus Melvin and Leslie.

On March 14, 2012, the trial court conducted a hearing on whether to probate Florence's Will and Codicils. Gary and Byron both testified in support of Florence's Will and Codicils. Gary testified that his mother and father intended on evenly dividing their property amongst their three children. Gary further explained that during the time period surrounding November 16, 2010, his mother was unable to accurately communicate due to her stroke and exhibited signs of poor decision making. Upon further inspection of Florence's medical records, the trial court found that Florence had "difficulty answering yes/no to multiple units" and had "very poor short-term memory." Byron also testified and stated that his grandmother was not of sound mind in November of 2010. Despite the fact that Byron stood to inherit a substantial portion of his mother Barbara's estate, and therefore Florence's estate, he nevertheless explained that his grandmother never indicated to him that she wanted to change the distribution of her estate. Instead, Byron revealed that his mother along with Melvin and Leslie sought to disinherit Bobby. It was disclosed that Barbara and Bobby had a history of bad blood. In fact, Bobby was indicted in the Fayette Circuit Court for the attempted murder of Barbara. Lastly, Melvin took the stand and disclosed that he and Leslie were experiencing financial problems. Melvin even acknowledged that the previously mentioned Judgment and Order of Sale could be satisfied if Florence's Trust was ruled to be valid.

5

On March 28, 2012, the trial court made its ruling. After hearing the above-referenced testimony, and after watching Florence's testimony during her previous guardianship hearing, the trial court determined that Florence's mental ability was impaired on November 16, 2010. Since Florence was of unsound mind at the time she executed the Trust document, it was ruled invalid and unenforceable. Florence's Will and Codicils were admitted to probate with Gary serving as the executor of Florence's estate. Any further transfer of Florence's property was prohibited without prior approval from the trial court.

### Settlement Agreement

The ruling of the Woodford District Court altered considerably the legal positions of the parties. As a result, on September 14, 2012, all the parties involved in the various suits executed a Global Settlement Agreement and Mutual Release of All Claims ("Settlement Agreement"). The Settlement Agreement disposed of all pending issues in the underlying action and all other pending actions among the parties. In regards to the family farms, the Settlement Agreement specified that the properties were to be divided as they were originally in Florence's Codicils.

On October 11, 2012, in a related case between the parties, *Flora, et al. v. Drury, et al.*, Woodford Circuit Court, 11-CI-00055, the Woodford Circuit Court entered an order approving the Settlement Agreement. On that same day, Judge Isaacs acknowledged the Woodford Circuit Court's approval of the Settlement Agreement and dismissed the underlying action with prejudice.

In a perfect world, that would have been the end of this bruising family squabble. Alas, it was not to be. The devil in the case would move to the details.

### *Execution and Preparation of Quitclaim Deeds*

Pursuant to the Settlement Agreement, the shelter corporation Rasa was to execute quitclaim deeds relinquishing any ownership interests or rights it had in the family farms deeded to it by Melvin and Leslie as previously mentioned. The reader will be spared all of the insufferable details of the disagreement which followed as to the drafting of these documents.

By early 2013, it became obvious that the parties had reached an impasse in the wording of the quitclaim deeds. In March of 2013, Respondents filed separate motions in the underlying case claiming that Petitioners were failing to comply with the terms of the Settlement Agreement by refusing to provide the required quitclaim deeds. Consequently, Respondents filed a motion with the trial court to proceed pursuant to Kentucky Rule of Civil Procedure ("CR") 70. This rule provides that a trial court may direct a party to comply with a judgment involving the conveyance of land. In addition, this rule allows the trial court to appoint another individual to convey the land for the disobedient party.

After a hearing, Judge Isaacs ordered the parties to reach an agreement regarding the language of the quitclaim deeds by April 19, 2013, or the court would refer the matter to the Master Commissioner for a recommendation as to the appropriate language to be used in the deeds. The parties failed to reach

7

an agreement. On June 12, 2013, Judge Isaacs entered an order referring the case to the Master Commissioner of the Scott Circuit Court for the purpose of drafting the recommended deed language for the transfer of the family farms as required by the Settlement Agreement. The Master Commissioner was specifically allowed to conduct conferences or hearings to gain the parties' participation in formulating her recommendation. As the trial court's order reflects, the Master Commissioner was instructed to create appropriate deeds of conveyance and to construct a report discussing her recommendations. Afterwards, the parties were free to object to the recommendation and could be heard on those objections.

### Petition for Extraordinary Relief

On July 5, 2013, Petitioners filed a Petition for Original Proceedings for injunctive relief in an appellate court pursuant to Kentucky Rule of Civil Procedure 76.36. The petition requested extraordinary relief in the form of a writ of mandamus or prohibition. Petitioners sought numerous orders, including the following: (1) a writ of mandamus ordering Judge Isaacs to "void his judicial actions taken in 2013"; (2) a writ of prohibition preventing Judge Isaacs from taking "further judicial action" in the case; (3) a writ of mandamus ordering Judge Isaacs to dismiss all legal action in the underlying case which is against Melvin Drury, individually, as heir or as the personal representatives of the Estates of Barbara Drury and William Drury; (4) a writ of prohibition stopping Judge Isaacs from taking judicial action against the same; and (5) a

8

writ of mandamus ordering Respondents to pay for the Petitioners' costs and attorney fees.

While the action was pending in the Court of Appeals, Respondents continued their attempt to enforce the settlement agreement. On September 4, 2013, they filed a motion with the trial court requesting that it set aside its previous October 11, 2012, final order dismissing the action pursuant to CR 60.02. Judge Isaacs ultimately signed Respondents' proposed order thereby vacating its previous October 11, 2012, dismissal. Judge Isaacs explained that regardless of how the need is characterized—whether mistake, inadvertence, excusable neglect, or even extraordinary reasons justifying relief—Respondents demonstrated a need to be relieved from the order dismissing the action so that they may explore opportunities to enforce the terms of the Settlement Agreement. Petitioners immediately supplemented their writ petition to include a request for a writ mandating Judge Isaacs to vacate and void his order granting Respondents' CR 60.02 motion.

### Court of Appeals' Opinion

On December 10, 2013, in a terse opinion, the Court of Appeals denied the petition for writ of mandamus and prohibition. The Court of Appeals' opinion first cited *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381 (Ky. App. 2002), which held that a settlement agreement is an enforceable contract. For that reason, the Court of Appeals concluded that the trial court did in fact have subject matter jurisdiction to enforce the Settlement Agreement despite the fact that it had previously dismissed the action in October of 2012.

9

Secondly, the Court of Appeals disposed of Petitioners' lack of personal jurisdiction argument by simply stating that Petitioners failed to demonstrate that they lacked an adequate remedy by appeal. Similarly, the Court of Appeals refused to address Petitioners' additional grounds for the issuance of a writ relating to CR 70 and Kentucky Revised Statute ("KRS") 396. Once more, the Court of Appeals briefly mentioned that Petitioners failed to show a lack of adequate remedy by appeal. Petitioners appealed the Court of Appeals' denial to this Court as a matter of right pursuant to § 115 of the Kentucky Constitution and CR 76.36(7)(a).

## Writ of Mandamus and Prohibition

In *Hoskins v. Maricle,* this Court discussed the history and purpose of writs in the Commonwealth of Kentucky, along with the circumstances under which they will be granted. 150 S.W.3d 1 (Ky. 2004). Writs of prohibition/mandamus are reserved for "extraordinary cases and are therefore discouraged . . . ." *Cox v. Braden,* 266 S.W.3d 792, 796 (Ky. 2008) (citing *Buckley v. Wilson,* 177 S.W.3d 778, 780 (Ky. 2005)). Prior to determining whether an extraordinary writ is appropriate, the reviewing court must first determine if one of the following limited circumstances is present: (1) the inferior court is acting or is about to act without jurisdiction and there is no remedy through an application to an intermediate court, or (2) the inferior court is acting or about to act erroneously, yet within its jurisdiction, and the petitioner has no adequate remedy by appeal or otherwise *and* great injustice

10

and irreparable injury will result in the event the writ is denied.[1]  *Id.* (quoting

*Hoskins,* 150 S.W.3d at 10). Even if the petitioner demonstrates these

requirements, it is still within the reviewing court's sound discretion to grant or

deny a writ of prohibition/mandamus. *Southeastern United Medigroup, Inc. v.*

*Hughes,* 952 S.W.2d 195, 199 (Ky. 1997) (citing *Haight v. Williamson,* 833

S.W.2d 821, 823 (Ky. 1992)). With these standards in mind, we now turn to

Petitioners' appeal which broadly argues that the trial court abused its

discretion in denying their petition. Petitioners supply this court with identical

arguments made to the Court of Appeals.

### Trial Court's 2013 Orders

Petitioners first request a writ of mandamus to "vacate and void" all of

Judge Isaacs' "judicial actions taken in 2013." Along these same lines,

Petitioners also seek a writ "prohibiting the trial Judge to take further judicial

action in the case." Despite their use of rather broad language, Petitioners are

actually requesting that we prohibit or void the June 12, 2013, trial court order

referring the case to the Master Commissioner, in addition to the September

11, 2013, trial court order setting aside its previous order of dismissal.

Since Petitioners are arguing that Judge Isaacs lacked jurisdiction to

render both orders, they believe the first categorical writ distinction applies. In

---

[1] Within the second set of circumstances, a writ may be issued despite there being a lack of irreparable injury if the petitioner can demonstrate that "a substantial miscarriage of justice" will occur and it is "in the interest of orderly judicial administration." *The Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610, 616 (Ky. 2005) (quoting *Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky. 1961)). Yet, even in these special cases there must still be a showing that the petitioner has no adequate remedy by appeal or otherwise. *Id.* at 617.

11

support of this position, Petitioners rely heavily on *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750 (Ky. 2005), *overruled on other grounds by Interactive Media Entm't and Gaming Ass'n, Inc. v. Wingate*, 320 S.W.3d 692 (Ky. 2010). In *Newell*, we upheld the denial of a writ. However, in dicta we opined that the petitioner would have likely prevailed if he had asserted lack of jurisdiction and proceeded under the first category, as Petitioners have done in this case.

While the case before us displays similarities to *Newell*, this Court believes *Newell* is distinguishable. First, and as discussed more fully below, Judge Isaacs proceeded under the civil rules of procedure which authorized his post-dismissal actions. For example, CR 70 allows for additional court action in the event a party fails to convey land or execute a deed as mandated by a court judgment. Secondly, the trial court in *Newell* did not conduct a CR 60.02 hearing and therefore proceeded despite the existence of a valid order of dismissal. Judge Isaacs, however, vacated his previous order of dismissal after conducting a hearing on Respondents' CR 60.02 motion. Thusly, we disagree that *Newell* requires this Court to evaluate Petitioners' writ petition under the first class of writs analysis. On the contrary, this Court is of the opinion that Petitioners' writs actually fall within the second type of writ action.

As explained, Judge Isaacs entered an order approving the Settlement Agreement on October 11, 2012. On that same day, Judge Isaacs dismissed the underlying action pursuant to the terms of the approved Settlement Agreement. Accordingly, once the Settlement Agreement had been approved and integrated into the order of the trial court, it became, for all practical

12

purposes, a "judgment." It follows then, that Judge Isaacs retained authority to enter the above-referenced orders so as to enforce the Settlement Agreement. *See Akers v. Stephenson,* 469 S.W.2d 704, 706 (Ky. 1970) (a trial court has "the authority . . . to enforce its own judgments and remove any obstructions to such enforcement."). The trial court did just that in its June 12, 2013 order; it utilized CR 70 to direct the Master Commissioner to aid the parties in effectuating performance of the Settlement Agreement's terms. *See Wheeler v. Ligon,* 428 S.W.2d 215 (Ky. 1968). Moreover, the trial court vacated its previous order of dismissal through the use of CR 60.02 in an effort to allow Respondents to enforce the Settlement Agreement. We have no doubt that the trial court had jurisdiction to act in this way. *See Watson v. Humphrey,* 170 S.W.2d 865, 866–867 (Ky. 1943) (a trial court "unquestionably ha[s] jurisdiction to decide whether a judgment should be vacated or set aside and to determine its ultimate effect and its conclusiveness as to other parties.").[2]

Before we continue with analyzing the writ petition under the second class of writ's standard, we will briefly address Petitioners' additional jurisdictional arguments. First, Petitioners assert that the trial court does not have personal jurisdiction over Rasa. Yet, this Court has previously stated that a lack of personal jurisdiction does not automatically avail the Petitioners to the first class of writs. *See Goldstein v. Feeley,* 299 S.W.3d 549, 553 (Ky. 2009)

---

[2] There are few examples of circumstances in which a trial court would lack the jurisdiction to grant relief pursuant to CR 60.02. If a CR 60.02 motion is granted pursuant to subsection (a) through (c), or under the guise of (f), and a year has passed since the judgment was entered, then jurisdiction may be lacking. *See Asset Acceptance, LLC, v. Moberly,* 241 S.W.3d 329 (Ky. 2007). Those circumstances are not present in the case before us.

13

It is subject matter jurisdiction that is referred to in the categorization of writ cases, not personal jurisdiction. *Petrey v. Cain,* 987 S.W.2d 786, 788 (Ky. 1999), *overruled on other grounds by Masters v. Masters,* 415 S.W.3d 621 (Ky. 2013).

Furthermore we believe Petitioners' *res judicata* argument is an attempt to illustrate that the trial court no longer has jurisdiction to vacate its previous dismissal and issue further orders in this action. Since *res judicata* is an affirmative defense, we find that Petitioners' argument lacks merit and really goes more towards the merits of the underlying case. *Yeoman v. Commonwealth, Health Policy Bd.,* 983 S.W.2d 459 (Ky. 1998).

Our inquiry now turns to the second prong of the first prerequisite which asks whether Petitioners have an adequate means of redress, whether by appeal or otherwise. *Bender,* 343 S.W.2d at 801 (stating that not having an adequate means of redress is an absolute prerequisite to obtaining a writ). Whether an adequate remedy by appeal exists is a pure question of law, which we review de novo. *Newell,* 158 S.W.3d at 755. The Court of Appeals' opinion simply concluded that Petitioners had not demonstrated that they lacked an adequate remedy by appeal. Although lacking in analysis, we find no error in the Court of Appeals' holding.

Having no adequate remedy by appeal or otherwise simply connotes that the aggrieved party "could not thereafter be rectified in subsequent proceedings in the case." *Bender,* 343 S.W.2d at 802. Petitioners have not demonstrated such a harsh reality. In regards to the June 12, 2013, order referring the

14

matter to the Master Commissioner, Petitioners cannot point to any harm they have since suffered. We can certainly anticipate that Petitioners may suffer harm in the event the Master Commissioner recommends that the quitclaim deeds state that the properties' titles passed through Florence's Estate. However, if the Master Commissioner's recommendation is adverse to Petitioners, they still enjoy a means of redress. As the June 12, 2013, order explains, the parties may object to the Master Commissioner's recommendation, and can even receive a hearing on those objections. Thusly, Petitioners may rectify an adverse Master Commissioner recommendation by pursuing subsequent proceedings at the trial court level. Furthermore, if the trial court ultimately adopts an adverse Master Commissioner recommendation, the parties may appeal such an order upon final adjudication or dismissal of the case.

The above reasoning holds true in regards to the trial court's September 11, 2013, order granting Petitioners' CR 60.02 motion. The trial court explained that it was not setting aside the Settlement Agreement; rather, it is still in place and still approved by the court. The trial court clarified that it vacated its prior dismissal so that it may "consider any further action necessary to effectuate the terms of the Agreement," including enforcing the terms against Rasa. Thusly, we find that it is clear that a dismissal will be reached again in this case. At that time, Petitioners will have the opportunity to appeal, if necessary. In other words, if Petitioners ultimately obtain an adverse judgment due to the trial court reopening the case, they will have the

15

opportunity to rectify that judgment through a standard appeal. *Toyota Motor Mfg., Kentucky, Inc. v. Johnson,* 323 S.W.3d 646, 649 (Ky. 2010). Such a remedy is adequate despite it being annoying, inconvenient, or expensive. *Id.* at 653. Consequently, the Court of Appeals did not err in determining that Petitioners did not demonstrate a lack of adequate remedy by appeal or otherwise. [3]

## KRS Chapter 396

Petitioners also seek a writ of mandamus requiring the trial court to dismiss any and all legal action in the underlying case which is against Melvin Drury individually, and as the heir or personal representative of the Estates of Barbara Drury and William Drury. In addition, Petitioners request a writ prohibiting Judge Isaacs from providing any and all relief to Respondents in this action which is against Melvin individually, and as the heir or personal representative of the Estates of Barbara Drury and William Drury. In support thereof, Petitioners argue that the trial court lacks jurisdiction to allow Respondents relief which may be satisfied from the Estates of Barbara Drury and William Drury. As Petitioners allege, "it is undisputed that Respondents did not properly file and present claims as mandated by KRS Chapter 396 and which is a statutory condition precedent to filing suit." In regards to Petitioner's KRS Chapter 396 argument, the Court of Appeals merely concluded

---

[3] This Court will not address whether Petitioners qualify for the "special cases" exception to the issuance of a writ because "the exception allows a petitioner to avoid only the requirement of great and irreparable injury, not the requirement of lack of an adequate remedy by appeal." *Chauvin,* 175 S.W.3d at 617 *(citing Bender,* 343 S.W.2d at 801).

16

that Petitioners have "failed to demonstrate the lack of adequate remedy by appeal." Despite the lack of analysis, we agree.

The record provided to the reviewing court in a writ action is abbreviated and unsubstantiated. *Cox*, 266 S.W.3d at 797. The record in the case before us is no different. As a result, this Court has no way of determining whether Respondents truly failed to make a presentation of their claims in the Drurys' Estates. In fact, a brief review of the record indicates that Respondents did actually present their claims to the administrator of the Drurys' Estates. Yet, it appears that Melvin disallowed these claims. Accordingly, this underlying action may be the next procedural step required by the rules. Indeed, it may be that Respondents commenced the underlying action as a separate collection action against the subject estates and personal representatives. KRS 395.0551(1). However, the time limitations on such actions certainly appear to be implicated based on the date in which the underlying action was filed.

This Court believes the more appropriate method of exploring the alleged deficiency is a motion to dismiss the collection action due to failure to state a claim pursuant to the applicable sections of KRS Chapter 365. We assume Melvin may have filed such a motion, or he may have not. This Court simply does not have a complete record to aid in making such a determination. Nonetheless, if the trial court is proceeding in the face of violations of KRS Chapter 365, then Petitioners may pursue the normal and usual avenues of appeal available once an adverse final judgment is rendered. As such, the

17

Court of Appeals did not err in concluding that Petitioners failed to satisfy the threshold requirement of a lack of an adequate remedy by appeal or otherwise.

## Intermediate Relief

Lastly, we will address Petitioners' "Motion for Injunctive Relief to Order Judge Paul F. Isaacs to Refrain from Further Action in 11-CI-498 and Stay 2013 Judgments Pending Appeal and Motion to Hear and Decide Appeal En Banc."

Although not specifically cited, we assume CR 76.33 is the rule under which their motion proceeds. This rule provides that an appellate court may grant "intermediate relief upon a satisfactory showing that otherwise [the party] will suffer immediate and irreparable injury before a hearing may be had on the motion." An irreparable injury analysis, however, is no longer necessary since Petitioners' motion is now moot. As this Court has explained, mootness occurs when there is "a change in circumstance in the underlying controversy which vitiates the vitality of the action." *Commonwealth v. Hughes,* 873 S.W.2d 828, 830 (Ky. 1994). Since the merits of this appeal have been adjudged, an injunction and/or a stay of the Woodford Circuit Court proceedings is no longer necessary. Petitioners' request for intermediate relief is hereby denied.

## Conclusion

In summary, this Court finds that Petitioners have failed to meet the threshold requirements for the issuance of a writ. Specifically, Petitioners have not demonstrated that they lack an adequate remedy by appeal or otherwise.

18

For the aforementioned reasons, we affirm the Court of Appeals' order denying the petition for writs of mandamus and prohibition.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Leslie Dean
Attorney at Law

APPELLEE:

Hon. Paul F. Isaacs
Judge, Woodford Circuit Court

COUNSEL FOR GARY FLORA, ETC., REAL PARTIES IN INTEREST:

James Lee Deckard

COUNSEL FOR BOBBY FLORA, REAL PARTY IN INTEREST:

William K. Moore

COUNSEL FOR BYRON ROSS DRURY AND REGINA DRURY,
REAL PARTIES IN INTEREST:

Phillip M. Maloney

COUNSEL FOR CAROLYN CARROWAY, MASTER COMMISSIONER,
REAL PARTY IN INTEREST:

Carolyn Carroway