**THREE ONE-BALL PINBALL MACHINES v. COMMONWEALTH.**

Court of Appeals of Kentucky.
May 2, 1952.

Rehearing Denied June 20, 1952.

J. D. Buckman, Jr., Atty. Gen., Richard L. Garnett, Commonwealth's Atty., Glasgow, for appellant.

J. Wood Vance, Jr., Marion Vance, Glasgow, Rodes K. Myers, Bowling Green, for appellee.

COMBS, Justice.

The Commonwealth of Kentucky has obtained judgment authorizing confiscation of the three pinball machines referred to in the caption. The style of the case is a misnomer. Although the machines are designated as the appellants in the case, it is their owners who argue so forcefully that the lives of the ingenious gadgets should be spared.

The machines are so constructed that when a nickel is deposited in the appropriate slot the machine automatically registers certain odds. The player may accept those odds, or he may continue to drop in nickels until he obtains the odds he desires to play. He then pulls a lever and a single ball is propelled onto a table equipped with certain obstructions and with a number of holes in it. If the ball falls into the proper hole, the player wins whatever odds are registered on the board. If the ball does not fall into the proper hole, the player gets nothing. The player has no way of knowing what his odds will be until the coin is placed in the slot. The machines are so constructed that the odds may range from zero to 320 games for one nickel. The machines are also equipped with a meter which registers the games won by the player.

These particular machines were installed by their owners in an office maintained as headquarters for the Belmont Taxicab Company. The attendant in the office paid to the players of the machines five-cents for each game won. The owners of the machines collected the impounded coins at intervals of approximately three days, reimbursed the owner of the premises for money paid out by him to the players, and the remainder of the proceeds was divided one-half to the owners of the machines and one-half to the owner of the premises. It might be noted in passing that the venture was profitable to both parties. The owner of the premises testified that for one three-day period his part of the "take" amounted to $150.

KRS 436.280 provides in part:

"Any bank, table, contrivance, machine or article used for carrying on a game prohibited by KRS 436.230, * * * may be seized * * * and upon conviction of the person setting up or keeping the machine or contrivance, the money or other articles shall be forfeited for the use of the state, and the machine or contrivance and other articles shall be burned or destroyed. Though no person is convicted as the setterup or keeper of the machine or contrivance, yet, if a jury, in summary proceedings, finds that the money, machine or contrivance or other articles were used or intended to be used for the purpose of gambling, they shall be condemned and forfeited."

The jury in this case, under proper instructions, found the machines were used for the purpose of gambling.

KRS 436.230, referred to in the statute quoted above, reads in part:

"(1) Any person who, with or without compensation, sets up, keeps, manages, operates or conducts or assists in setting up, keeping, managing, operating or conducting a keno bank, faro bank or other machine or contrivance used in betting whereby money or anything of value may be won or lost, * * * shall be fined five hundred dollars, and confined in the penitentiary for not less than one nor more than three years."

■ The Legislature, at its 1950 session, amended KRS 436.230 so as to except from the provisions of the statute certain types of pinball machines "which only gives a free game or games for the skill of the player playing such machine or device." Appellants contend that these machines fall within the exception permitted by the 1950 amendment. It is unnecessary for us to decide that question here. The jury decided the machines actually were used for the purpose of gambling. The statute KRS 436.280 makes machines or contrivances "used or intended to be used for the purpose of gambling" subject to confiscation. In view of the jury's finding we need not decide whether they were "intended" to be used for that purpose.

It is suggested by appellants that commonplace objects such as numbers on automobile license plates, white horses grazing in pastures, and numbers on railroad cars may be used for gambling purposes, but that they are not for this reason subject to confiscation by the state. The point is that license plates and railroad cars ordinarily are not kept and maintained for gambling purposes, whereas these machines, admittedly, were installed and maintained for that purpose. In the operation of the machines excepted from the statute by the 1950 amendment, the element of skill plays some part and there is no reward to the player other than free games. The element of skill apparently plays little or no part in the operation of the machines in question, and as operated by appellants there was a monetary reward. We cannot indulge in the casuistry suggested by appellants and thereby permit the legislative intent to be thwarted.

■ Appellants also raise a question of evidence. The Commonwealth introduced as witnesses two persons who had played the machines, and it is argued they are accomplices and that the court erred in failing to instruct the jury their testimony, without corroboration, was not sufficient to sustain a finding for the Commonwealth. Criminal Code of Practice, §§ 241, 242. Subsection 2 of KRS 436.230 specifically provides that the penalty provision of the statute shall not apply to players of the machines unless they aid or take part in setting up, conducting, keeping, managing or operating them. The witnesses, therefore, were not accomplices within the meaning of the statute.

The judgment is affirmed.