COMMONWEALTH of Kentucky, ex rel. J. Michael BROWN, Secretary, Justice and Public Safety Cabinet, Appellant,

v.

INTERACTIVE MEDIA ENTERTAINMENT AND GAMING ASSOCIATION, INC.; Interactive Gaming Council; vicsbingo.com; playersonly.com; sportsbook.com; sportsinteraction.com; mysportsbook.com; linesmaker.com; and Hon. Thomas D. Wingate, Judge, Franklin Circuit Court, Appellees.

No. 2009–SC–000043–MR.

Supreme Court of Kentucky.

March 18, 2010.

David Eric Lycan, William Harvey May, Aaron Davis Reedy, Hurt, Crosbie & May PLLC, William Cecil Hurt, Jr., Wethington, Hurt & Crosbie, PLLC, Lexington, KY, Counsel for Appellant.

Jon L. Fleischaker, Robert Kenyon Meyer, James Lee Adams, Dinsmore & Shohl, LLP, Louisville, KY, Counsel for Appellee, Interactive Media Entertainment & Gaming Association, Inc.

Margaret Eileen Mary Keane, Greenebaum, Doll & McDonald, PLLC, Louisville, KY, Phillip D. Scott, Greenebaum, Doll & McDonald, PLLC, Lexington, KY, Counsel for Appellee, Interactive Gaming Council.

Bruce F. Clark, Stites & Harbison, PLLC, Frankfort, KY, Ian Thomas Ramsey, John Lewis Tate, Joel Beres, Stites & Harbison, PLLC, Louisville, KY, Counsel for Appellees, Interactive Gaming Council and vicsbingo.com.

William E. Johnson, Johnson, True & Guarnieri, LLP, Frankfort, KY, Counsel for Appellees, playersonly.com, sportsbook.com, sportsinteraction.com, mysportsbook.com and linesmaker.com.

Thomas D. Wingate, Frankfort, KY, Appellee.

Laura Anne D'Angelo Wyatt, Tarrant & Combs, LLP Lexington, KY, Daniel G. Dougherty, Ebay, Inc., San Jose, CA, Counsel for Amicus Curiae, ebay, Inc.

Michael Romano Mazzoli, Cox & Mazzoli, PLLC, Louisville, KY, Timothy B. Hyland, Rockville, MD, Counsel for Amicus Curiae, Network Solutions, LLC.

David Alan Friedman, Louisville, KY, Counsel for Amicus Curiae, The Electronic Frontier Foundation, The Center for Democracy and Technology, The American Civil Liberties Union of Kentucky, The Media Access Project, The United States Internet Industry Association, The Internet Commerce Coalition, The Internet Commerce Association.

Joshua Taylor Rose, Charles M. Pritchett, Jr., Bart Loveman Greenwald, Frost, Brown, Todd, LLC, Louisville, KY, Counsel for Amicus Curiae, Poker Players Alliances.

Opinion of the Court by Justice NOBLE.

This case arises from an order by the Franklin Circuit Court that 141 internet domain names be seized from their owners and operators and transferred to the dominion and control of the Commonwealth. Attorneys acting on behalf of the domain names sought a writ of prohibition against the seizure, which the Kentucky Court of Appeals granted. Because the parties seeking the writ have failed to demonstrate that they have standing to do so, this Court reverses, though this does not foreclose the possibility of future relief.

## I. Background

Initiating a fight against internet gambling in Kentucky, the Commonwealth filed an *in rem* action in Franklin Circuit

Court over multiple pieces of intangible property—141 internet domain names. The Commonwealth had funded an extensive research project, whereby several civilians were employed to search the internet for gambling domains. The 141 domains discovered in the search were, in the Commonwealth's view, hosting illegal gambling activities. Armed with KRS 528.010 and acting through the Secretary of the Justice and Public Safety Cabinet, J. Michael Brown, the Commonwealth sued in Franklin Circuit Court to have those domain names seized.

In a hearing where only the Commonwealth participated, the trial court heard testimony regarding the discovery and nature of the domain names. Using a probable-cause standard, the court concluded that the websites were indeed violating Kentucky's gambling laws. Pursuant to what it found to be a civil forfeiture remedy in KRS 528.010, the court ordered seizure of the domain names and instructed their registrars to transfer them to the Commonwealth of Kentucky.

When those supposedly affected learned of the order, counsel appeared in Franklin Circuit Court on their behalf to challenge the seizure. The parties purporting to be affected by the seizure were atypical *in rem* claimants, however. Instead of owners, operators, or registrants of the website domain names, the lawyers opposing the Commonwealth claimed to represent two types of entities: (1) the domain names themselves and (2) gaming trade associations who profess to include as members registrants of the seized domains, though they have yet to reveal any of their identities. The various groups of domain names and gaming associations sought to intervene in the case and dismiss

the seizure. The circuit court ultimately denied all motions to intervene or dismiss and scheduled a forfeiture hearing where the actual registrants and owners of the seized domains could prove their innocence.[1] The court specifically noted in its order that only the domain name owners, operators, and registrants had a legal interest in the domain names and only they or their representatives could defend against forfeiture.

Upon the denial of their motions, the groups and associations sought a writ of prohibition from the Court of Appeals to enjoin the impending forfeiture. The Court of Appeals issued the writ, reasoning that the trial court acted beyond the jurisdiction of KRS 528.100. The Commonwealth, appealing as a matter of right, asks this Court to vacate the writ of prohibition.

## II. Analysis

Numerous, compelling arguments endorsing the grant of the writ of prohibition have been presented throughout the Court of Appeals' opinion, Judge Taylor's separate concurrence, the Appellees' briefs, the amici briefs, and oral argument before this Court. This plethora of arguments includes, among others, that (1) Kentucky law only mandates the seizure of tangible gambling devices, and not intangible things such as domain names; (2) the court's civil forfeiture was unauthorized because KRS 528.100 only contemplates criminal sanctions; and (3) Kentucky lacks *in rem* jurisdiction over the domain names because they are not located in Kentucky.

Although all such arguments may have merit, none can even be considered unless presented by a party with standing. No

---

1. The court did, however, permit the gaming associations to participate in the litigation as *amici curiae.*

such party has appeared at the original proceedings in Franklin Circuit Court, the writ petition at the Court of Appeals, or on the appeal here to this Court. As mentioned above, two types of Appellees sought the writ, claiming an interest in the domain names: (1) the purported domain names themselves and (2) associations of anonymous domain registrants. Neither group meets the basic requirements of standing.

## A. Six Domain Names

■ Counsel purportedly appeared directly on behalf of six domain names and participated in the writ action at the Court of Appeals. The advocacy on behalf of five of these domain names was consolidated into one representation. These five domain names—playersonly.com, sportsbook.com, sportsinteraction.com, mysportsbook.com, and linesmaker.com—have been referred to as the "group of five." The sixth, vicsbingo.com, joined in the appeal through separate counsel, together with the Interactive Gaming Council, one of the gaming associations. Counsel for these six domain names have consistently claimed the names are some of the intangible property seized by the trial court and that the names are appearing to protect their own interests in themselves. Put simply, counsel purports to represent property that is protecting itself.

Although unaddressed in the Court of Appeals opinion below, the Commonwealth has apparently challenged the standing of these individual domain names at every stage of the proceedings. It has insisted that the property seized cannot defend itself, but can only be defended by those having an interest in the property—namely owners and registrants of domain names. Since no owners or registrants have ever claimed to be participating in this case at any level, the Commonwealth requests that this Court vacate the writ and restore the seizure of the domain names.

The domain names' assertion of standing hinges on the origination of this controversy as an *in rem* proceeding. They claim that since the Commonwealth named the domain names as the *in rem* defendants, the names must have an opportunity to represent themselves.

The domain names' argument confuses the nature of *in rem* litigation. It has long been recognized in Kentucky, as well as elsewhere, that in *in rem* litigation, only those with an interest in the property, such as current owners, have an interest in the litigation. *See Taylor v. City of La Grange*, 262 Ky. 383, 90 S.W.2d 357 (1936); *City of Middlesborough v. Coal & Iron Bank*, 33 Ky. L. Rptr. 469, 110 S.W. 355, 356 (1908); *United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F.Supp. 808, 810 (E.D.Ky.1989). The property does not have an interest in itself and, therefore, does not have any interest in the litigation. *See United States v. One Parcel of Real Property*, 831 F.2d 566, 568 (5th Cir.1987) ("[O]wners are persons, not pieces of real property; [a] piece of real property has no standing to contest its forfeiture."). An internet domain name does not have an interest in itself any more than a piece of land is interested in its own use. Just as with real property, a domain name cannot own itself; it must be owned by a person or legally recognized entity. Nor does the property itself care whether it is owned and operated by private business or seized by state government.

■ When faced with a similar claim, the Fifth Circuit found the concept of property having *in rem* standing to be so far-fetched as to be "not arguable on its merit s" and "frivolous," *id.*, that it issued sanctions against the attorneys purporting

to represent such property. *See id.* at 568–69. This Court agrees that the contention that mere property can represent itself is frivolous.

■ The fundamental standing requirement of an interest *in* the property does not dissipate in a writ case. A writ of prohibition, just like any other judicial remedy, may only be sought by a party with a "judicially recognizable interest." *Schroering v. McKinney,* 906 S.W.2d 349, 350 (Ky.1995). The writ granted below serves only the interests of the owners and registrants of the domain names. It does not benefit the domains themselves; they *are* the interest at question in this case and belong to still unnamed owners and registrants.

The group of five mistakenly suggests unfairness in the Commonwealth proceeding *in rem* against property without giving the property a "right to defend." Property possesses no such right. Kentucky's judicial system exists to protect the interests of persons—both individuals and groups—not property. Property does not have constitutional or statutory rights. Nor does it have a right of access to the judicial system. Nor does it have a judicially recognizable interest in this writ.

Counsel for vicsbingo.com, meanwhile, misinterprets the unorthodox styling of *in rem* case names to mean that the usual standing requirements do not apply. It cites *Three One–Ball Pinball Machines v. Commonwealth,* 249 S.W.2d 144 (Ky.1952), as an example of property contesting its own seizure under Kentucky's old gambling laws. To be sure, that case name is styled so that the pinball machines themselves are listed as a party (in that case, the appellant), as is routine for civil forfeiture proceedings. This is because *in rem* "case captions have historically referenced the property subject to forfeiture and not the interested parties." *Commonwealth v. Maynard,* 294 S.W.3d 43, 49 (Ky.App. 2009). But as Justice Combs pointed out in the second sentence of *Three One–Ball Pinball Machines,* "[t]he style of the case is a misnomer. Although the machines are designated as the appellants in the case, it is their *owners* who argue" against the seizure. 249 S.W.2d. at 145 (emphasis added); *see also 14 Console Type Slot Machines v. Commonwealth,* 273 S.W.2d 582, 582 (Ky.1954) ("On this appeal by the slot machines (*through their owner* ), the main contention is that . . . .") (emphasis added). Likewise, in the situation at hand, the style of the case title does not change the fact that only those with an interest in the property have standing. The writ may be styled as being sought in the *name* of the domains, but the parties arguing on their behalf must be ones with standing, such as owners.

The domain names are not their own owners or registrants, nor do they claim to be. Thus, they lacked standing to pursue the writ.

### B. Gaming Associations

Two gaming associations have attempted to enroll in this litigation: the Interactive Media Entertainment & Gaming Association (iMEGA) and the Interactive Gaming Council (IGC). iMEGA and IGC both claim to represent registrants of some of the seized domains. They claim to have standing on behalf of their members under the doctrine of associational standing.

iMEGA refuses to reveal which registrants it represents, or even how many. It simply claims to have members who registered some, but not all, of the seized domains.

IGC, on behalf of its members, stakes

claim to 61 seized domain names.[2] IGC is not all that clear, perhaps intentionally, about whether it represents registrants or the actual domain names. For example, on page 13 of its brief, it claims to be "[r]epresenting the *registrants* for 61 of the 141 Domain Names." (Emphasis added.) Yet the following sentence of the brief reads, "IGC identified all 61 *domain names* it represents . . . ." (Emphasis added.) For purposes of this appeal, we will interpret IGC as purporting to represent registrants. The problem, however, is that IGC fails to disclose who these registrants are.

■ Associational standing inherently depends on the membership of the association. The U.S. Supreme Court has set out three requirements for an association to have standing in federal court:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In *Hunt*, the Court found that the Washington State Apple Advertising Commission had standing to challenge a North Carolina statute which prevented its members, Washington apple dealers, from displaying Washington apple grades. *See id.* at 337–45.

While this Court has not held that the precise requirements of federal associational standing apply in Kentucky courts, at least the first requirement must apply. An association can have standing only if its members could have sued in their own right. Otherwise the primary requirement

for standing, that the party has a real interest in the litigation, would be thwarted.

In *City of Ashland v. Ashland F.O.P. No. 3*, 888 S.W.2d 667 (Ky.1994), this Court granted the Fraternal Order of Police standing to challenge a city ordinance that limited public employment to people living within city limits. The F.O.P. had standing because its members—the police—had a "real and substantial interest" in striking the ordinance. *Id.* at 668. Although the ordinance only applied to new employees, other police officers depended on the quality of the new police for their own safety. *Id.* "Such an interest conferred standing on the police association because, according to stipulation, it represented the majority of city police." *Id.*

■ Unlike the F.O.P., the gaming associations in this case have failed to disclose whom they represent. While IGC claims to represent 61 of the seized domains and iMEGA purports to represent "some" more, this Court cannot simply take their words for it. The associations bear the burden to demonstrate that they satisfy the requirements of standing, and to do so requires proving that their members would have standing themselves. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (party invoking jurisdiction bears burden of proving standing); *Am. Chemistry Council v. DOT*, 468 F.3d 810, 820 (D.C.Cir.2006) (association bears burden to prove members have standing). Without even revealing any of the registrants they purport to represent, the associations cannot hope to achieve associational standing. "At the very least, the identity of the party suffering an injury in fact must be firmly established." *Am. Chemistry Council*, 468 F.3d at 820; *see also United States v. AVX*

---

**2.** Which 61 of the 141 is not apparent from our record.

*Corp.,* 962 F.2d 108, 117 (1st Cir.1992) (no associational standing where injured members were unidentified); *Sierra Club v. SCM Corp.,* 747 F.2d 99, 103, 107–08 (2nd Cir.1984) (same); *Revell v. Port Authority of N.Y. and N.J.,* 321 Fed.Appx. 113, 117 n. 2 (3rd Cir.2009) (failure to identify affected members causes standing to "evaporate quickly"). *But see Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir.1999) (taking contrary position).

The cyber-age status of their members does not let iMEGA and IGC escape traditional standing requirements. In another suit brought on by an association of internet domain registrants, the Coalition for ICANN Transparency (CFIT) initially merely "alleged vague categories of members that might suffer harm." *Coalition for ICANN Transparency Inc. v. Veri-Sign, Inc.,* 464 F.Supp.2d 948, 956 (N.D.Cal.2006), *rev'd on other grounds,* 567 F.3d 1084 (9th Cir.2009). Thus, "associational standing had not been alleged because CFIT failed to name even one member." *Id.* CFIT was able to solve this problem, however, by identifying one of its members, Pool.com, Inc., which allegedly suffered injury-in-fact. *Id.* Here as well, the associations had every opportunity to cure their standing defects by identifying their seized members; in fact, they were ordered to do so by the Franklin Circuit Court. Refusing to follow this straightforward requirement, iMEGA and IGC do not have standing.

Admittedly, in some cases the surrounding particulars may not demand that an association identify specific members. For example, in Ashland F.O.P., this Court did not discuss whether the fraternal order had identified affected members. Indeed, the Ashland F.O.P. may not have provided a membership list. But in that case it was stipulated that the F.O.P. represented the majority of the police force. 888 S.W.2d at 668. Since all members of the police could claim injury from the ordinance (albeit indirectly), it necessarily followed that the F.O.P.'s members would have had standing in their own right. Unlike in *Ashland F.O.P.,* there is no stipulation as to iMEGA or IGC's memberships. In fact, nothing is known about their members, other than their attorneys' vague assertions they represented "some" of the registrants.

Moreover, notably distinct from *Ashland F.O.P.,* not all internet gaming registrants are affected by the seizure; only the registrants of the 141 seized domains. In cases where the harm is specific, the proof of standing must be equally specific. *See Forum for Academic & Inst. Rights, Inc. v. Rumsfeld,* 291 F.Supp.2d 269, 288 (D.N.J.2003). For example, in cases where only people in a certain geographical area may be harmed, a showing that members are located in that area is "critical" to associational standing. *See id.* (distinguishing *AVX Corp.,* 962 F.2d at 117, stating, "Geographic location was critical to establishing members' injury-in-fact in the environmental context . . . ."). Similarly, where, as here, the injury is limited to those whose property was actually seized, associational standing requires some assurance that members actually have an interest in the property. Thus, the associations must specifically identify some of the affected registrants they represent.

 This is not to say that showing associational standing requires heavy proof. On the contrary, it must simply be proven to the same extent as any other "indispensable part of the plaintiffs case." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* At the pleading stage, less

specificity is required. At that point, an association may speak generally of the injuries to "some" of its members, for the "presum[ption] [is] that general allegations embrace those specific facts that are necessary to support the claim." *Id.; accord Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.,* 448 F.3d 138, 145 (2nd Cir.2006). By the summary judgment stage, however, more particulars regarding the association's membership must be introduced or referenced. *See Bldg. & Constr. Trades Council of Buffalo,* 448 F.3d at 144–45; *Sierra Club v. SCM Corp.,* 747 F.2d 99, 102 (2nd Cir.1984) (affirming dismissal where association "indicated that it did not intend to identify any of its members who might have been harmed"). Finally, before a favorable judgment can be attained, the association's general allegations of injury must clarify into "concrete" proof that "one or more of its members" has been injured. *See Sierra Club,* 747 F.2d at 107. "By refus[ing] to come forward with any such showing," any claim to associational standing, and the potential for success on the merits is forfeited. *See id.*

While the normal sequence of litigation is muddled in a writ petition, since only pleadings are filed and no discovery is allowed, the basic requisites for a judgment remain. This includes proof of standing. When associational standing is the chosen route, the writ petitioner must prove it represents at least one member with an injury in order to obtain relief. This may be done by reference to the facts in the underlying litigation or a verified assertion, such as in an affidavit, attached to the petition. Through their unwillingness to identify any of their members, iMEGA and IGC failed to meet this burden. As such, iMEGA and IGC lack standing and, therefore, their writ petition should have been denied.

Writs are to be granted only as an extraordinary remedy, and certainly only when parties who have demonstrated a concrete interest are before the court. This is not to say, however, that the failure to establish standing in this writ action completely forecloses relief by way of a writ in the future. If a party that can properly establish standing comes forward, the writ petition giving rise to these proceedings could be re-filed with the Court of Appeals. The Court of Appeals could then properly proceed to the merits of the issues raised, or upon a proper motion, this Court could accept transfer of the case, as the merits of the argument have already been briefed and argued before this Court. Until then, however, consideration of the merits of this matter is improper for lack of standing.

## III. Conclusion

Due to the incapacity of domain names to contest their own seizure and the inability of iMEGA and IGC to litigate on behalf of anonymous registrants, the Court of Appeals is reversed and its writ is vacated. This case is hereby remanded to the Court of Appeals with instructions to dismiss the Appellee's writ petition.

MINTON, C.J.; ABRAMSON, SCHRODER and VENTERS, JJ., concur.

SCOTT, J., concurs in result only.

CUNNINGHAM, J., not sitting.