# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 17, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000125-MR

FINAL

DATE 1-7-16 _Susan A. Groush, D.C._

WAYNE MICHAEL PUTNAM; AND
BETH DIANE GUDEMAN

APPELLANTS

ON APPEAL FROM COURT OF APPEALS
V.                CASE NO. 2014-CA-001635-OA
FAYETTE CIRCUIT COURT NO. 05-CI-01717

HONORABLE ERNESTO M. SCORSONE,
JUDGE, FAYETTE CIRCUIT COURT

APPELLEE

AND

ESTATE OF JOSEPH WILLIAM PHELPS; MARY
MARGARET PHELPS; MELANIE McCOOL; AND
WILLIAM PHELPS, JR.

REAL PARTIES IN INTEREST

## MEMORANDUM OPINION OF THE COURT

## VACATING AND REMANDING

This case presents the question whether judgment-debtor defendants ordered to produce documents related to a company that they have a substantial interest in and that they likely control have standing to challenge the order in a writ action. The Court of Appeals concluded that they do not because they have no concrete, personal interest in the company's documents. This approach ignores that the discovery order is directed at the judgment-debtor defendants, requiring them to produce the documents in question. Because the order affects their rights and obligations, to the extent they can even comply with it, they have standing to challenge it. For that reason, the

order of the Court of Appeals denying the petition for a writ is vacated, and this case is remanded for further consideration.

## I. Background

The Appellants, Wayne Michael Putnam and Beth Diane Gudeman, and a third person, Stephen L. Whitman,[1] were officers and part-owners of two sets of corporations. One set of corporations consisted of a series of pharmaceutical companies that were dedicated to developing a potentially lucrative cancer drug that appears to be undergoing FDA approval. These companies appear to have been consolidated into CBA Pharma, Inc. The only asset owned by the company is the cancer drug. The Appellants are not the only owners of CBA Pharma, Inc., which has approximately 800 shareholders, though they are trustees of a voting trust holding approximately 90% of the company's stock.

The other set of companies, consisting at present of Scientific Imaging Technology Enterprises, Inc., Pixelvision of Oregon, Inc., and PixelVision, Inc., manufacture digital cameras and parts for digital cameras. These companies were allegedly profitable through the late 1990s. The profits are alleged to have been used to fund the pharmaceutical companies, which had no revenue because they were in the development phase.

Joseph William Phelps became involved in a series of business transactions with the Appellants beginning in 2001, when the camera companies became less profitable. Specifically, Phelps provided a series of substantial loans to the companies, which the Appellants personally guaranteed and which were consolidated into a promissory note in 2002.

---

[1] Whitman is not part of the litigation at this time.

Phelps also agreed to guarantee a substantial loan from U.S. Bank, N.A. to the camera companies, and, in turn, the Appellants agreed to a secondary guarantee under which they would repay any amount that Phelps had to pay to U.S. Bank. The details of these transactions are immaterial, but they are recounted in *Scientific Imaging Technology Enterprises, Inc. v. Phelps*, 2011-CA-002119-MR, 2014 WL 97393 (Ky. App. Jan. 10, 2014) (unpublished).

In 2003, Phelps entered into an agreement with the Appellants, and some of their companies, under which he agreed to release the remaining debt on the promissory note (which at that time was still almost $3,000,000) and to release the Appellants from all their guarantees, both as to the direct loans from Phelps and the loan from U.S. Bank. In exchange, Phelps received 2,000,000 shares of CBA Pharma, Inc. common stock.

As it turned out, Phelps was not well and had begun having symptoms of dementia. He was diagnosed as having Lewy body dementia, a degenerative neurological disease similar to Alzheimer's disease and Parkinson's disease. In light of this diagnosis and after discovering apparently unusual dealings in Phelps's finances, in 2004, Phelps's family contacted a lawyer to examine Phelps's relationship with the Appellants and their companies.

In April 2005, the camera companies defaulted on the U.S. Bank loan, and U.S. Bank initiated the underlying litigation. Phelps, the Appellants, Whitman, and the camera companies were named as defendants. Phelps filed an answer and cross-claim against the other defendants alleging fraud and that he had lacked capacity to enter into the 2003 release agreement. Phelps also moved the circuit court for leave to file a third-party complaint against the

3

pharmaceutical companies, but that was denied. The motion was made and denied at least one more time in the course of the litigation.

Phelps died in October 2005, and his estate was substituted as a party. Eventually, U.S. Bank also brought suit against Phelps's wife, Mary Margaret Phelps; his daughter, Melanie McCool; and his son, William Phelps, Jr.; claiming they had participated in fraud in obtaining an extension of the substantial loan from U.S. Bank. They counterclaimed for abuse of process.

Eventually, U.S. Bank settled with the estate and the named members of the Phelps family. The bank assigned its interest in its loan to the Phelps family. In exchange, the bank was paid $675,000, and the family dropped their counterclaims. The settlement agreement also provided that 20% of any money recovered based on the bank's assigned rights would be paid to the bank. This, in effect, made the estate and the family the plaintiffs in the underlying action, leaving the Appellants, Whitman, and the camera companies as the defendants.

The case went to trial on the Phelps family's fraud and incapacity claims and for collection of amounts owed on the promissory note and the U.S. Bank loan. The trial court granted a directed verdict in the family's favor as to the enforceability of the loans, reserving the question of damages. The jury found that Phelps lacked capacity to enter into the 2003 release agreement and did not reach the fraud claim. The circuit court entered a judgment against the Appellants, Stephen Whitman, and the camera companies in an amount exceeding $12,000,000. This judgment, except for $675,000, was affirmed by the Court of Appeals, *Scientific Imaging Technology Enterprises, Inc. v. Phelps,*

4

2011-CA-002119-MR, 2014 WL 97393, at * (Ky. App. Jan. 10, 2014) (unpublished), and this Court declined discretionary review.

The Phelps family then began trying to collect from the judgment debtors. As part of this effort, they served a series of post-judgment discovery requests. Eventually, in 2014, the circuit court entered a discovery order commanding

> that the Judgment Debtors shall produce to the Judgment Creditors within ten ... days of the date of entry of this Order the following information and documents: The name, address, type of account, name of account and account number of any bank or other institution at which any business in which the Judgment Debtors Michael Putnam and Beth Diane Gudeman have an interest maintains any type of account; and the production of bank statements and accounts receivable and payable ledgers for such businesses for the years 2001–2005 and the past year.
>
> Such documents may be produced subject to the Agreed Protective Order and Confidentiality Agreement submitted by the parties.

Concerned that this order would lead to the production of irrelevant information about the pharmaceutical companies, particularly CBA Pharma, Inc. (and, apparently, sensitive information about the company that could help its competitors), the Appellants filed a petition for a writ of prohibition with the Court of Appeals seeking to bar enforcement of the order. The Court of Appeals did not address whether the remedy of a writ was available under the procedural test laid out in *Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004), nor did it address the substantive question whether the lower court was acting erroneously. Instead, the court denied the petition on the ground that the Appellants lacked standing because they were named only in their individual capacities, the pharmaceutical companies were not named parties, and thus

5

the Appellants "ha[d] not demonstrated a personal and concrete interest in the records of CBA Pharma."

The Appellants now appeal to this Court. Because a writ petition filed in the Court of Appeals is an original action in that court, the Appellants' appeal to this Court is a matter of right. *See* CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court....").

## II. Analysis

The Court of Appeals' conclusion about the Appellants' standing is incorrect for several reasons. The most important of these is that the circuit court's discovery order is directed at the Appellants, as "Judgment Creditors," not CBA Pharma. Though the order may have an effect on CBA Pharma, it will do so through the Appellants' interest in the company and possession or control over the documents ordered to be disclosed.

The Phelps family claims there is keen irony in the Appellants' having fought throughout the litigation to keep CBA Pharma out of the underlying litigation as a named party, and their now seeking to assert that they have a concrete and personal interest in the records of the company. Ironic though this may be, it is not an irrational position to take in that the discovery order itself is directed to the Appellants, not CBA Pharma. To the extent that the discovery order—which aims to force disclosure of a third party's documents—

6

is directed at the Appellants, they have standing to try to resist the order through legal means of redress, such as a writ petition.

In support of its decision, the Court of Appeals cited *Commonwealth ex rel. Brown v. Interactive Media Entertainment and Gaming Association, Inc.*, 306 S.W.3d 32 (Ky. 2010), in which we stated: "Writs are to be granted only as an extraordinary remedy, and certainly only when parties who have demonstrated a concrete interest are before the court." *Id.* at 40. It is certainly true that a writ petitioner must have a concrete interest at stake. But that case is not analogous to this one. In that case, the underlying litigation was a forfeiture action. A pair of trade associations claimed to represent various owners of property at issue in the underlying litigation and tried to appear in the litigation on the owners' behalf, but they were unwilling to reveal the identity of those owners. This Court concluded that the trade associations had not established standing because they had not established that they were acting on behalf of anyone with anything at stake in the litigation.

But in this case, the Appellants are not trying to intervene in the litigation on behalf of CBA Pharma. Instead, the Appellants are the named defendants, against whom a judgment has been rendered and against whom discovery has been ordered. If anything, this could suggest that the circuit court's discovery order is too broad to the extent that it arguably tries to bind a non-party.

That said, this Court has held that discovery may extend to the records of a non-party where "the documents sought were 'in the possession, custody or control of the party upon whom the request is served.'" *Edwards v.*

7

*Hickman*, 237 S.W.3d 183, 189 (Ky. 2007) (quoting CR 34.01). And the Appellees have alleged, repeatedly, that CBA Pharma is under the Appellants' control. As in *Edwards*, the discovery requests here were served on the named parties, the Appellants, and the discovery order purported to bind them. Of course they have standing to challenge that order—to the extent it can bind them.

The Court of Appeals' approach to standing here is unusual. On the one hand, the trial court may order discovery only as to documents under a party's control, which may in this case extend to records of CBA Pharma. On the other hand, the Court of Appeals presumed that because the records in question were those of a third party, the Appellants had no standing to seek a writ to undo the discovery order. But both of those things cannot be correct. The Appellants cannot be subject to the discovery order *and* have no standing to challenge it.

No doubt, questions of standing can be difficult at times. That is one of the reasons that this Court has held that standing may not be raised by a court *sua sponte, Harrison v. Leach*, 323 S.W.3d 702, 709 (Ky. 2010), as it appears to have been here. Where the issue is not fully litigated by the parties, there is too much danger of error based on incorrect assumptions about the relationships between the parties and third parties. Under *Harrison*, even if the Court of Appeals had been correct on the substance of the standing question, it had no power to raise the issue *sua sponte*. Since the Phelps family did not raise it, it is considered waived.

8

Finally, because the Court of Appeals denied the petition on standing grounds, it never reached the merits of the petition, namely, whether the Appellants have satisfied the tests for availability of a writ of prohibition laid out in *Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004), and subsequent cases, and, if so, whether the lower court erred and a writ should issue. Because a writ action is an original action in the Court of Appeals, at least when the writ is sought against a circuit court judge, the appropriate forum for consideration of those questions for the first time is the Court of Appeals. We therefore decline to address them at this time.

### III. Conclusion

The Court of Appeals was incorrect in deciding that the Appellants had no standing to challenge the trial court's post-judgment discovery order. That was the sole basis of the court's decision, which did not reach the traditional questions of whether a writ was even available as a remedy and, if it was, whether the writ should issue. The Court of Appeals' order denying the writ petition is vacated, and this matter is remanded to that court for further consideration of the Appellants' petition.

Minton, C.J.; Abramson, Cunningham, Keller, Noble and Venters, JJ., sitting. All concur. Wright, J., not sitting.

COUNSEL FOR APPELLANTS:

Derise Duane Cook
John Milton Sosbe
Duane Cook & Associates, PLC
135 N. Broadway
Georgetown, Kentucky 40324

APPELLANT:

Honorable Ernesto M. Scorsone
Judge, Fayette Circuit Court Court
Robert F. Stephens Courthouse
120 N. Limestone
Lexington, Kentucky 40507

COUNSEL FOR REAL PARTIES IN INTEREST:

Sam Preston Burchett
200 West Vine Street, #720
Lexington, Kentucky 40507

William Joseph Walsh IV
Buchenberger Walsh, PLLC
2010 Edgeland Avenue
Louisville, Kentucky 40204