RENDERED: APRIL 27, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0053-DG

CITY OF PIKEVILLE, KENTUCKY;                                    APPELLANTS
BOARD OF COMMISSIONERS CITY
OF PIKEVILLE, KENTUCKY; CITY OF
PIKEVILLE EXPOSITION CENTER
CORPORATION; JAMES A. CARTER;
AND PHILIP R. ELSWICK


                              ON REVIEW FROM COURT OF APPEALS
V.                                     NO. 2020-CA-0437
                     PIKE CIRCUIT COURT NO. 18-CI-00602


KENTUCKY CONCEALED CARRY                                          APPELLEE
COALITION, INC.


**OPINION OF THE COURT BY JUSTICE NICKELL**

**REVERSING AND REMANDING**

Under the Kentucky Constitution, circuit courts "have original jurisdiction of all justiciable causes not vested in some other court." Ky. Const. § 112(5). Courts, thus, do not possess freestanding subject-matter jurisdiction to evaluate the legality of actions taken by the other branches of government upon the complaint of a concerned citizen unless the citizen demonstrates, at a minimum, a cognizable injury to his or her rights by the opposing party.

We granted discretionary review to evaluate the reversal by the Court of Appeals of a summary judgment granted by the Pike Circuit Court dismissing

Kentucky Concealed Carry Coalition's (KC3) claims that the City of Pikeville, Kentucky, (the City) and its agents violated KRS[1] 65.870, which generally prohibits the regulation of firearms by local government. Having determined KC3 lacked constitutional standing to assert the claims raised in its complaint, we reverse the Court of Appeals and remand to the trial court with instructions to dismiss the action in its entirety, without prejudice.

KC3 is a non-profit Kentucky corporation comprised of individuals "who work to protect the Second Amendment from over-regulation and implement the right of Kentucky's citizens to carry firearms either openly or concealed, in accordance with the laws and Constitutions of the Commonwealth of Kentucky and the United States."[2] By posted policy and the operation of various rules and contractual provisions, the City and its agents effectively prohibit both the open and concealed carrying of firearms within certain buildings and properties owned, leased, or occupied by the City. These properties include the Expo Center[3], the Garfield Community Center, the Fire Department Training Center, the RV Park and recreational shelters located in Bob Amos Park, and the City's parks.[4]

KC3 filed suit against the City, James A. Carter, in his official capacity as Mayor, Philip R. Elswick, in his official capacity as City Manager, the Board of

---

[1] Kentucky Revised Statutes.

[2] Paragraph 11 of KC3's complaint.

[3] Currently known as the Appalachian Wireless Arena.

[4] Count 4 of the Complaint references the prohibition of firearms in "any City of Pikeville Park" and "any city park."

2

Commissioners, and the City of Pikeville Exposition Center Corporation. In its complaint, KC3 alleged the City's prohibition on firearms within the properties constituted unlawful local regulation in violation of KRS 65.870. KC3 further alleged the City implemented an unlawful policy prohibiting the possession of firearms within any RV or other vehicle on the premises of the RV Park in violation of KRS 527.020. KC3 sought declaratory relief, injunctive relief, and an award of attorney's fees, costs, and expenses.

In its answer, the City asserted its posted policies, rules, and contract provisions regarding the possession of firearms upon the City's properties were authorized by the federal Gun-Free School Zones Act of 1990, 18 U.S.C.[5] §§ 921-922, in conjunction with companion legislation encouraging the posting of signs by local authorities as well as KRS 527.070 which prohibits the possession of a weapon on school property and also requires relevant signage. Additionally, the City asserted KRS 237.110 and KRS 244.125 authorized the prohibition on the possession of firearms at certain events at the Expo Center where alcoholic beverages are served by the drink. The City sought dismissal of the complaint and an award of attorney's fees, costs, and expenses.

The parties filed cross-motions for summary judgment. The trial court recounted the undisputed evidence that the Expo Center, Garfield Community Center, Fire Department Training Center, and the City of Pikeville Park[6] were

---

[5] United States Code.

[6] As opposed to Count 4 of the complaint, which referenced "any city park," the trial court's ruling on summary judgment concerns the "City of Pikeville Park," which refers to a specific location.

3

all located within 1000 feet of the Pikeville Elementary School. The trial court further noted the Expo Center regularly hosts school-related activities, such as basketball and archery tournaments. Moreover, the trial court recognized that many other events at the Expo Center, such as music concerts, are operated in a proprietary, rather than public, capacity. During such private events, the prohibitions on the possession and carrying of firearms were the result of contractual negotiations and obligations rather than governmental action.

Regarding the RV Park, the trial court noted the undisputed evidence that the RV Park was located within 1000 feet of the City's soccer field, junior high school football field, tennis courts, and track and field facilities. It noted these sporting facilities are subject to a use agreement between the City and the Pikeville Independent School Board allowing the School Board non-exclusive use of the City's property to operate school sports programs. As a result, the trial court concluded each of the properties were subject to the Gun-Free School Zones Act and KRS 527.070. In addition, the trial court concluded the provisions of KRS 65.870 did not preclude the City from enforcing the applicable federal and state laws prohibiting the possession of firearms upon its properties.

Based upon the foregoing legal conclusions, the trial court entered summary judgment in favor of the City and dismissed KC3's complaint. By separate order, the trial court determined the City was the prevailing party and awarded $15,404.97 in attorney's fees pursuant to KRS 65.870(4).

4

On direct appeal, the Court of Appeals reversed and remanded for further proceedings. The Court of Appeals held the City was not permitted to enforce an informal blanket prohibition on the possession and carrying of firearms upon the properties, concluding:

    (1) under the Gun-Free School Zones Act, the City was permitted to prohibit the open carrying of firearms upon any of its properties located within 1000 feet of a school;

    (2) any other prohibition regarding the concealed carrying of firearms upon the properties could only be enforced pursuant to a duly enacted ordinance under KRS 237.115(2);

    (3) private renters of the Expo Center's facilities have the right to prohibit the carrying of firearms at such private events; and

    (4) the City may not prohibit the lawful storage of firearms within a vehicle under KRS 527.020(4) and KRS 527.020(8).

Because the Court of Appeals reversed the grant of summary judgment and remanded for further proceedings, the Court also reversed the award of attorney's fees to the City. We granted discretionary review.

The parties appeared at oral argument before this Court on February 8, 2023. During oral argument, the Court raised the issue of constitutional standing because it did not appear KC3 or any of its members had been injured by the City's allegedly unlawful prohibition on the possession and carrying of firearms. In response to questioning from the Court, counsel for KC3 stated there were affidavits attached to the complaint from members who had been denied entry to the Expo Center.

5

The Court additionally inquired whether Pikeville Code of Ordinances (PCOD) Title XIII § 130.15[7] had any impact upon the outcome of the proceedings, given both the Court of Appeals and the trial court appeared to operate under the impression that no applicable ordinance existed. To clarify the issue concerning the validity of the ordinance, the Court orally requested the parties to jointly supplement the record.

On March 1, 2023, the parties filed a joint supplemental record entry. The supplemental record suggests PCOD § 130.15 is, in fact, currently in effect as duly amended by the City of Pikeville Commission on February 11, 2013. The parties did not present any evidence the ordinance had been nullified by judicial order or otherwise repealed by the legislative body. Additionally, KC3 filed a notice acknowledging the complaint does not contain any attached affidavits concerning alleged injuries to its members, and instead directed our attention to the allegations contained in paragraphs 12, 19, and 100 of its complaint.

---

[7] PCOD Title XIII § 130.15 states in pertinent part:

(A)   It shall be unlawful to enter into or upon any building owned, leased or occupied by the City of Pikeville or its agencies by a licensee carrying a concealed deadly weapon pursuant to a license granted in KRS 237.110 except buildings used for public housing by private persons, highway rest areas, firing ranges, and private dwellings owned, leased, or controlled by the City of Pikeville.

(B)   The areas in which the carrying of concealed deadly weapons is prohibited hereunder shall be clearly identified by signs posted at the entrance to the restricted area.

## CONSTITUTIONAL STANDING, GENERALLY

To begin, Kentucky "courts do not function to give advisory opinions, even on important public issues, unless there is an actual case in controversy." *Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992). Standing must be addressed as a threshold matter because "all Kentucky courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only *justiciable causes* proceed in court[8], because the issue of constitutional standing is not waivable." *Commonwealth, Cabinet for Health & Fam. Servs., Dept. for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 192 (Ky. 2018).

The justiciability requirement operates as a constitutional limitation on the exercise of judicial power. *Id.* at 193. While the practical effect of the standing requirement is to avoid speculation and debate over abstract or hypothetical questions, the purpose of the doctrine is "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The standing doctrine "serves to prevent the judicial process from being used to usurp the powers of the political branches . . . and confines the . . . courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

The United States Supreme Court has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient,

---

[8] As noted above, the Kentucky standing requirement derives from Section 112(5) of the Kentucky Constitution.

standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). This Court has adopted the federal *Lujan* test to determine whether a party has standing. *Sexton*, 566 S.W.3d. at 196; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). We explained the test for constitutional standing in Kentucky as follows:

> [F]or a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . ." "The injury must be . . . 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.'" "The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision."

*Sexton*, 566 S.W.3d. at 196 (footnotes omitted).

Because the standing requirements contained in the Kentucky Constitution mirror the standing requirements under the United States Constitution, federal decisions on standing may be accepted as persuasive authority. *Ward v. Westerfield*, 653 S.W.3d 48, 52 (Ky. 2022). The Sixth Circuit Court of Appeals aptly explained the meaning of the injury requirement as follows:

> The requirement that an injury be "concrete and particularized" has two discrete parts: concreteness, which is the requirement that the injury be "real," and not "abstract," . . . and

8

particularization, which is the requirement that the plaintiff "*personally* [have] suffered some actual or threatened injury."

*Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 Fed. Appx. 6, 8 (6th Cir. 2018) (internal citations omitted).

Moreover, a court must determine whether a party has established standing for each "of the particular claims asserted." *Allen*, 468 U.S. at 752. Each separate claim must be carefully scrutinized because "standing is not dispensed in gross." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734, (2008) (alteration omitted) (quoting *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996)).

If a plaintiff fails to establish constitutional standing, the case should be dismissed for lack of subject-matter jurisdiction. *Thompson*, 748 F.Appx. at 11. Even so, a dismissal for lack of subject-matter jurisdiction should ordinarily be without prejudice because such a dismissal does not operate as an adjudication on the merits of the dispute. *Id.*

## ASSOCIATIONAL STANDING

In certain cases, an association may establish standing to assert a claim on behalf of its members despite the lack of an injury to the association, itself. The United States Supreme Court has identified three requirements for an association to demonstrate standing in federal court:

> (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.

9

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). While not adopting the entire *Hunt* test, this Court has held "at least the first requirement must apply." *Bradley v. Commonwealth ex rel. Cameron*, 653 S.W.3d 870, 880 (Ky. 2022) (quoting *Commonwealth ex rel. Brown v. Interactive Media Ent. & Gaming Ass'n, Inc.*, 306 S.W.3d 32, 38 (Ky. 2010)). Thus, in Kentucky, an association may have standing to assert a claim on behalf of its members "only if its members could have sued in their own right." *Id.*

Importantly, vague allegations that a member has suffered injury are insufficient to establish associational standing. *Interactive Media*, 306 S.W.3d at 39. An association must specifically identify the member whose alleged injury the association seeks to vindicate through judicial proceedings. *Id.* Indeed, "[i]n cases where the harm is specific, the proof of standing must be equally specific." *Id.* "[S]tanding cannot be inferred argumentatively from averments in the pleadings . . . but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal citations and quotations omitted).

The quantum of proof necessary to establish associational standing depends on the stage of the proceeding:

> At the pleading stage, less specificity is required. At that point, an association may speak generally of the injuries to "some" of its members, for the "presum[ption] [is] that general allegations embrace those specific facts that are necessary to support the claim." By the summary judgment stage, however, more particulars regarding the association's membership must be introduced or referenced. Finally, before a favorable judgment can be attained, the association's general allegations of injury must clarify into "concrete" proof that "one or more of its members" has

10

been injured. "By refus[ing] to come forward with any such showing," any claim to associational standing, and the potential for success on the merits is forfeited.

*Interactive Media*, 306 S.W.3d at 39-40 (internal citations omitted). In *Interactive Media*, this Court rejected a theory of associational standing on appeal from the grant of a petition for writ of prohibition where two gaming associations failed to specifically identify any of their members who had allegedly been injured by the seizure of internet domain names. *Id.* We held the lack of standing required dismissal of the writ petition, but further noted the associations' lack of standing did not preclude the availability of future relief "if a party that can properly establish standing comes forward." *Id.* at 40. To avoid confusion concerning the proper establishment of standing following dismissal, this Court clarified that the issue of standing must first be heard and decided at the trial court level in any subsequent proceedings. *Interactive Media Ent. & Gaming Ass'n, Inc. v. Wingate*, 320 S.W.3d 692, 695 (Ky. 2010).

Given this Court's prior reliance on federal decisions to explicate the constitutional standing requirements under Kentucky law, we pause again to note "the United States Court of Appeals for the Sixth Circuit questioned the continued validity of the federal associational standing doctrine, noting that the United States Supreme Court's recent cases demonstrate that a nonparty injury alone does not suffice to confer standing." *Bradley*, 306 S.W.3d at 779 n.25 (citing *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 537-43 (6th Cir. 2021)). However, as in *Bradley*, we need not further delineate the boundaries of associational standing in the present appeal because the issue of

11

KC3's constitutional standing may be adequately resolved using Kentucky's existing standing analysis.

## ANALYSIS

With these standards in mind, we must determine whether KC3 has standing to assert each of the claims set forth in its complaint. In Count 1 of the complaint, KC3 alleged the City implemented an unlawful policy prohibiting the possession, carrying, and transportation of firearms. In Count 2, KC3 alleged the City implemented an unlawful policy prohibiting the possession of firearms on the premises of the Garfield Community Center, RV Park, and the Fire Department Training Center. In Count 3, KC3 alleged the City implemented an unlawful policy prohibiting the possession of firearms within any RV or other vehicle on the premises of the RV Park. And, in Count 4, KC3 alleged the City implemented an unlawful policy prohibiting the possession, carrying, and transportation of firearms on the grounds of the City's parks.

None of the numbered counts in the complaint contain any allegations of concrete injury to KC3 or its members beyond the alleged unlawfulness of the City's stated policies. Instead, in paragraph 12 of the complaint, which was incorporated by reference into each of its four counts, KC3 alleged:

> Plaintiff KC3 is a "person or organization whose membership is adversely affected" by the ordinances, regulations and policies of the Defendants. KC3's membership lives in all areas of the Commonwealth, and KC3 has members who reside both within and within the immediate vicinity of the City of Pikeville, as well as members who in the past, present and for the foreseeable future, travel to and through the City of Pikeville for personal, recreational and/or business purposes. Plaintiff KC3 and its individual members desire the right to access the areas owned, leased or otherwise controlled by Defendants, without fear of

12

having their right to possess, carry and transport firearms openly or concealed denied by the Defendants. Many members of Plaintiff KC3 are firearms owners who are licensed to carry concealed firearms pursuant to Ky. Rev. Stat. § 237.110.

Further, in paragraph 19 of its complaint, which was also incorporated by reference into each of its four counts, KC3 further alleged:

Members of KC3 have been denied entry into the . . . Expo Center solely based on their lawful possession of firearms. Pursuant to Ky. Rev. Stat. § 65.870(4), KC3 has standing to file suit to enforce the provisions of Ky. Rev. Stat. § 65.870.

Additionally, Paragraph 100 of the complaint broadly states, "Plaintiff, and its individual members, are adversely affected by the Constitutional and statutory violations enumerated above and have standing to pursue this matter pursuant to Ky. Rev. Stat. § 65.870."

KC3 acknowledges no affidavits were attached to the complaint concerning the alleged injury to the unidentified members. And, our review of the record discloses no additional evidence concerning the identity of any allegedly injured members, nor any particularized injury purportedly sustained.

Speculative fears of prosecution or other future injuries are legally insufficient to confer standing. *Beshear v. Ridgeway Properties, LLC*, 647 S.W.3d 170, 176 (Ky. 2022); *Commonwealth v. Bredhold*, 599 S.W.3d 409, 418 (Ky. 2020). Any as yet unconstrained desire of KC3's unidentified members to access the various sites without fear their rights to carry firearms will be denied is simply too speculative to establish standing under our precedents. Moreover, the unsupported allegation concerning an actual denial of entry to

13

unidentified members lacks sufficient specificity to establish associational

standing because an association must, at the very least, disclose the identity of

the members whose interests the association purports to represent. *Interactive

Media*, 306 S.W.3d at 38. Absent the foregoing, an association "cannot hope to

achieve associational standing." *Id.*

Further, while the provisions of KRS 65.870(4)[9] establish a private cause

of action, the existence of statutory standing does not equate to the

constitutional standing required to establish judicial subject-matter

jurisdiction. *Sexton*, 566 S.W.3d at 191. Though both are termed, "standing,"

constitutional standing and statutory standing are distinct concepts. *Id.*

Constitutional standing involves the question of whether a court possesses the

constitutional power to resolve a legal controversy. *Id.*

A party demonstrates constitutional standing upon a showing of: (1)

injury; (2) causation; and (3) redressability. *Id.* at 196. Statutory standing

involves the question of whether the legislature has afforded a particular

plaintiff the right to sue to redress his injury. *Id.* at 191. A party demonstrates

---

[9] KRS 65.870(4) states in pertinent part:

A person or an organization whose membership is adversely affected by any ordinance, administrative regulation, executive order, policy, procedure, rule, or any other form of executive or legislative action promulgated or caused to be enforced in violation of this section or the spirit thereof may file suit against any person or organization specified in subsection (1) of this section in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief. A court shall award the prevailing party in any such suit:

(a) Reasonable attorney's fees and costs in accordance with the laws of this state; and

(b) Expert witness fees and expenses.

statutory standing by satisfying the requirements of the statute, which is a matter of statutory interpretation and "is perhaps best understood as not even standing at all." *Id.* Indeed, the dismissal of a claim for lack of statutory standing is properly viewed as a dismissal for failure to state a claim upon which relief may be granted. *Id.* (quoting 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure, Jurisdiction* § 353 (3d ed.)).

Thus, the ability of KC3 to sue under KRS 65.870(4) does not relieve its obligation to establish its own constitutional standing or the constitutional standing of its members, as required to establish subject-matter jurisdiction necessary to bring a claim before the courts.

## CONCLUSION

Under the authority cited above, we conclude KC3 failed to establish constitutional standing because it failed to produce sufficient proof of any concrete and particularized injury suffered by any of its members. We do not express any opinion on the merits of KC3's claims. Because KC3 lacked standing, the courts below lacked subject-matter jurisdiction to consider the merits of the complaint and the issue of attorney fees. Therefore, the action should have been dismissed in its entirety without prejudice. Moreover, because a dismissal without prejudice does not operate as an adjudication on the merits, there can be no prevailing party for the purpose of obtaining a statutory award of attorney fees. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 605 (2001); *Walters v. Moore*, 121 S.W.3d 210, 215-16 (Ky. App. 2003). We reiterate the dismissal for

15

lack of standing does not preclude future judicial relief should a party become subject to a non-speculative injury and otherwise comply with applicable rules of procedure and statutes of limitation. *Beshear v. Acree,* 615 S.W.3d 780, 828 (Ky. 2020). Accordingly, we reverse the decision of the Court of Appeals and remand this matter to the trial court with instructions to dismiss the action in its entirety, without prejudice.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, and Lambert, JJ., concur. Thompson, J., dissents by separate opinion.

THOMPSON, J., DISSENTING BY SEPARATE OPINION:

Respectfully, I dissent from the well-written opinion of the majority. My dissent is based upon our avoiding the issues presented by the parties after extensive litigation which has cost them substantial attorney fees.

The issue of standing was not raised by either party and was not raised in these proceedings until the Court asked questions relating to standing during oral argument. No briefing on this subject occurred and I believe that both parties expected a resolution of this matter on the merits.

The majority opinion opines that organizational standing was not established, quoting from *Commonwealth ex. rel. Brown v. Interactive Media Entertainment & Gaming Ass'n, Inc.*, 306 S.W.3d 32, 39-40 (Ky. 2010), which states that less specificity is required at the pleading stage, when allegations of injuries to some of its members is sufficient, as opposed to at the summary judgment or favorable judgment stage. However, the majority ignores that no further pleading requirement was ever established here where the motion for

16

summary judgment was not premised on lack of standing and we are not yet at a judgment on the merits stage.

In *Interactive Media*, various groups of domain names and gaming associations sought to intervene in the case and dismiss the seizure of their domain names. Attorneys sought to appear on behalf of domain names, thus "purport[ing] to represent property that is protecting itself" and on behalf of gaming associations which purported to represent either the domain names themselves or its members that had registered those domain names but would not disclose the names of those who registered the domain names. *Id.* at 36-38. The circuit court "ultimately denied all motions to intervene or dismiss and scheduled a forfeiture hearing where the actual registrants and owners of the seized domains could prove their innocence" and in its order specifically noted "that only the domain name owners, operators, and registrants had a legal interest in the domain names and only they or their representatives could defend against forfeiture." *Id.* at 35 footnote omitted.

As our Court specifically noted in its review of that case, "the Commonwealth has apparently challenged the standing of these individual domain names at every stage of the proceedings. It has insisted that the property seized cannot defend itself, but can only be defended by those having an interest in the property—namely owners and registrants of domain names." *Id.* at 36. Additionally, the Court explained that "the associations had every opportunity to cure their standing defects by identifying their seized members; in fact, they were ordered to do so by the Franklin Circuit Court." *Id.* at 39.

17

Therefore, the issue of standing was front and center, and that case was on very different footing than the one before us, where no one apparently asked for specific names of KC3's members who had been injured.

In *Interactive Media,* the Court acknowledged that in some associational standing cases where standing was determined to be sufficient, such as *City of Ashland v. Ashland F.O.P. No. 3 Inc.*, 888 S.W.2d 667 (Ky. 1994), a list of the organization's membership was not even necessarily required to be disclosed. *Interactive Media*, 306 S.W.3d at 38-39. Yet, the majority opinion has not even commented on whether KC3 was ever asked to disclose its membership list or specifically identify which of its members were injured and the particular facts involving such injuries. Instead, as in *Ashland F.O.P.*, it appears that both parties were satisfied that there was actual standing because an actual injury had taken place (if indeed banning persons from the Expo Center and prohibiting them from bringing guns into various places, was unconstitutional and constituted an injury). In fact, it could be argued that their level of confidence that there was standing was so high, they did not even feel the need to address such an issue.

*Interactive Media*'s general statement that more is required at the summary judgment stage, when discussing a case in which standing is central to its resolution before the trial court and was the specific issue being resolved, does not mean that at the summary judgment stage when standing is not at issue, that parties must put forth more affirmative evidence of standing than was required at the pleading stage. I believe *Interactive Media* supports my

18

contention that the allegations that KC3 made regarding its members being denied entry into the Expo Center solely based on their lawful possession of firearms states a sufficient injury at this stage in considering whether summary judgment was validly granted to the City on other bases.

It is my belief that the number one job of the Supreme Court of Kentucky is to adjudicate disputes between our citizens. This dispute is ripe for adjudication. It requires a complex, well briefed legal analysis of the interplay in the conflicts between local law, state law and federal law on an important subject matter. I disagree with the majority's decision to avoid wading into this controversy by at the last minute choosing to dismiss for lack of subject matter jurisdiction. At minimum, I urge the Court to first order supplemental briefing by the parties on this issue before we resolve it in this manner. Accordingly, I dissent.

COUNSEL FOR APPELLANTS:

Russell H. Davis, Jr.
Baird and Baird, PSC

COUNSEL FOR APPELLEE:

Steven D. Jaeger
The Jaeger Firm, PLLC